UNITED STATES of America, Appellee,

v.

Jarrell COX, Appellant.

UNITED STATES of America, Appellee,

v.

Mary WOODY, Appellant.

UNITED STATES of America, Appellee,

v.

Irving Stewart WISE, a/k/a J. R. Wise, Appellant.

Nos. 77–1832, 77–1838 and 77–1945.

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1978.

Decided July 14, 1978.

Rehearing and Rehearing En Banc Denied Aug. 4, 1978.

---

Mayer Kanter, Sioux City, Iowa, for appellants Cox and Woody.

Keith R. Strange, Sioux Falls, S. D., for appellant Wise.

Robert D. Hiaring, Asst. U. S. Atty., Sioux Falls, S. D., for appellee; David V. Vrooman, U. S. Atty., Sioux Falls, S. D., on brief.

Before HEANEY, BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This is a direct criminal appeal from a jury verdict of guilty.[1] The defendants-appellants, Jarrell Cox, Mary Woody, and Irving Stewart Wise, were all found guilty on all three counts of an indictment. Count I of the indictment charged a conspiracy to commit a wire fraud, to transport fraudulently taken property in interstate commerce, and to sell and dispose of property that had been taken by fraud and transported in interstate commerce, all in violation of 18 U.S.C. § 371. Count II charged the interstate transportation of property (grain of a value exceeding $5,000) taken by fraud in violation of 18 U.S.C. § 2314. Count III alleged the sale and disposal of fraudulently procured property (grain of a value more than $5,000) that had been transported in interstate commerce in violation of 18 U.S.C. § 2315.[2] We affirm the conviction of all three defendants.

The substance of the charges was that the defendants joined together with several other people in the perpetration of a grain fraud scheme. The scheme consisted primarily of arranging for the purchase of grain from grain elevators in Nebraska and South Dakota by telephone. Notice was given to the elevator managers that the purchase would be made by check and that the validity of the check could be confirmed by contacting the bank upon which it was drawn. The defendants and their coconspirators picked up the grain at the various elevators, made payment by check and after the grain was in their possession, placed stop payments on the checks that had been issued. The grain was then sold and the proceeds were retained by the defendants and their coconspirators.[3]

The central issue pressed on this appeal is whether there was a conflict of interest arising from representation of the three codefendants at trial by one attorney, thereby depriving the defendants of effective assistance of counsel as guaranteed by the Sixth Amendment.

During the early stages of the proceedings John Humpage of Topeka, Kansas, represented all three of the defendants, and Robert LaFleur of Rapid City, South Dakota, acted as local counsel for defendant Wise. These individuals withdrew prior to the trial and the defense was undertaken by John Burke of Sioux Falls, South Dakota, as retained counsel for all three defendants.[4]

The seminal decision in this area is *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942), wherein the Supreme Court stated:

[T]he "assistance of counsel" guaranteed by the Sixth Amendment contemplates

---

1. The Honorable Fred J. Nichol, Chief Judge, United States District Court for the District of South Dakota, presided.

2. Cox was sentenced to five years imprisonment on each count with sentences to run concurrently. The execution of sentence on Count III was suspended and Cox was sentenced to five years probation beginning upon his release from prison. Woody was sentenced to two years imprisonment on Counts I and II to run concurrently and on Count III she was sentenced to five years on probation. Wise received concurrent five year sentences on Counts I and II to be served consecutive to a sentence he was serving on a conviction from the District of Minnesota. *See United States v.*

*Wise*, 553 F.2d 1173 (8th Cir. 1977). On Count III Wise was placed on probation for five years and a $5,000 fine was imposed.

3. For a more detailed discussion of the operation of the scheme, see the opinion of this court in *United States v. Marley*, 549 F.2d 561 (8th Cir. 1977).

4. For purposes of raising the ineffective assistance of counsel issue it is immaterial whether counsel was appointed or retained, except that it is proper to consider that counsel was retained when addressing the waiver issue. *Buffalo Chief v. South Dakota*, 425 F.2d 271, 279 and n. 5 (8th Cir. 1970).

that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests.

Joint representation of codefendants is not per se violative of the Sixth Amendment right to effective assistance of counsel. *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978); *United States v. Lawriw*, 568 F.2d 98, 101 (8th Cir. 1977); *United States v. Valenzuela*, 521 F.2d 414, 416 (8th Cir. 1975), 424 U.S. 916 (1976); *United States v. Williams*, 429 F.2d 158, 160 (8th Cir.), *cert. denied*, 400 U.S. 947, 91 S.Ct. 255, 27 L.Ed.2d 253 (1970). In addition, a defendant may waive any actual or potential conflict of interest if such waiver is made knowingly and intelligently. *Holloway v. Arkansas, supra*, 435 U.S. 483, 98 S.Ct. at 1178 n. 5, 55 L.Ed.2d 426; *Glasser v. United States, supra*, 315 U.S. at 70, 62 S.Ct. 457; *United States v. Lawriw, supra*, 568 F.2d at 104.

In *United States v. Lawriw, supra*, 568 F.2d at 104–05, this court announced that henceforth in this circuit when codefendants are represented by the same counsel in a criminal prosecution the district court has an affirmative duty to make a detailed inquiry of whether there is a conflict of interest and whether any real or potential conflict is waived by the defendants.

In the present case the following exchange between the court, counsel, and the defendants occurred:

MR. HIARING [Assistant United States Attorney]: First, there is some concern on my part on the fact that we do have three defendants represented by one attorney.

THE COURT: Yes, sir.

MR. HIARING: And I believe that the law appears to be at this time that any potential conflict in that situation can be waived by the defendants. To avoid any problems that could occur in this case in the future before the Court of Appeals or anything like that, I guess I would request the Court to advise them that a potential conflict may exist, and have their statement on the record that in fact they're aware of it, and that it is waived.

THE COURT: Do I understand, as indicated before, that you either do not have any confessions or admissions of codefendants, or if you do have them, that they would not be used as a part of the case in chief against the three defendants, is that correct?

MR. HIARING: At least they would not be used to the extent that they would indicate acts of other defendants.

THE COURT: Yes, sir. They could be used for impeachment, possibly, as to their own testimony in the event that they should take the stand.

MR. HIARING: Or they could be used potentially—and I don't intend to at this point, but potentially they could be used as they affect that defendant himself.

THE COURT: Yes. Well, I think, then, that I will start with Mrs. Woody, as she is the first one named in the indictment. Mrs. Woody, you are aware, of course, generally, of the charges that have been made against you as well as Mr. Wise and Mr. Cox. You are also aware that Mr. Burke is representing all three of you. I assume you may have talked this over with Mr. Burke. Do you have any objection, or since Mr. Burke is your personally retained counsel, do you have any objection whatever to Mr. Burke representing you as well as Mr. Wise and Mr. Cox, even though there might be a potential conflict?

DEFENDANT WOODY: No, sir, I don't.

THE COURT: You have no objection?

DEFENDANT WOODY: No, sir.

THE COURT: How about you, Mr. Wise?

DEFENDANT WISE: No objection, Your Honor.

THE COURT: And you, Mr. Cox?

DEFENDANT COX: No, sir, I sure don't.

THE COURT: Very well. You have discussed this matter, I assume, Mr. Burke, with the three defendants?

MR. BURKE: No. I'd have to be truthful with the Court and say no, we hadn't discussed the—

THE COURT: The possible conflict?

MR. BURKE: Well, I don't see any possible conflict, and so I saw no reason to discuss it. I'd have to truthfully say we have not discussed it.

THE COURT: I see. Well, even though, then, you have not gone over it with counsel, are you still of the same opinion, Mrs. Woody, that you have no objection to Mr. Burke representing you as your personally retained counsel, along with representing Mr. Wise and Mr. Cox?

DEFENDANT WOODY: No, sir, I don't.

THE COURT: And the same with you; is that agreeable with you, Mr. Wise?

DEFENDANT WISE: Yes, Your Honor.

THE COURT: And with you, Mr. Cox?

DEFENDANT COX: Yes, sir.

THE COURT: Very well. Thank you, Mr. Hiaring.

■ With the benefit of this court's ruling in *United States v. Lawriw, supra,* it is likely that the district court would have conducted a more extensive examination of the defendants. However, the trial of the present case preceded this court's decision in *Lawriw.* The affirmative duty of inquiry announced in *Lawriw* was promulgated under the supervisory powers of the court. In this respect, the court's opinion in *Lawriw* went beyond the strict constitutional requirements for waiver in order to prevent constitutional infirmities from arising in cases where one attorney represents two or more defendants in a criminal prosecution. We interpret the *Lawriw* decision to

apply to all cases which came to trial after that case was decided by this court. *See United States v. Foster,* 469 F.2d 1, 4–5 (1st Cir. 1972).

■ In sum, we are persuaded that the government has met its burden of showing that there was a knowing and intelligent waiver by the defendants in this case even though the requirements of *Lawriw* may not have been specifically followed. In response to questions from the court, each of the defendants stated that he or she wanted Burke to continue representing him or her, even though there might be a potential conflict because Burke was also representing the other defendants. In general defendants are free to employ counsel of their own choice and the courts are afforded little leeway in interfering with that choice. *United States v. Valenzuela, supra,* 521 F.2d at 416; *United States v. Garcia,* 517 F.2d 272 (5th Cir. 1975); *United States v. Wisniewski,* 478 F.2d 274, 285 (2d Cir. 1973).

In any event, this court has required a showing of actual conflict of interest or evidence pointing to a substantial possibility of a conflict of interest before reversal is mandated on the ground of ineffective assistance of counsel.[5] *United States v. Lawriw, supra,* 568 F.2d at 101; *United States v. Valenzuela, supra,* 521 F.2d at 416. No such showing has been made in the present case.

■ We are satisfied that there was no actual conflict of interest, or the substantial possibility of one, before trial commenced. John Burke, attorney for the codefendants, stated to the court that he did not see any possible conflict in his representation of all three defendants. *Compare Holloway v.*

5. In the recent case of *Holloway v. Arkansas, supra,* the Supreme Court overturned a conviction, holding that the trial court erred in requiring an attorney to represent codefendants after the attorney had made a timely motion for appointment of separate counsel on the ground that a conflict of interest existed. We are confronted with the exact opposite factual situation in the present case. Here the defendants' trial counsel assured the district court that no conflict existed.

In *Holloway,* the Court held that where a trial court improperly requires joint representation there can be no harmless error. In that case the Court was concerned with whether a constitutional violation was subject to the harmless error rule. Here, the question is whether there was a constitutional violation. Under the rule articulated in *Holloway,* prejudice will be assumed when there is ineffective assistance of counsel, but ineffective assistance will not be inferred solely from the fact of joint representation.

*Arkansas, supra; Glasser v. United States, supra.* In general the district court is entitled to rely upon the assertions of counsel. *See Holloway v. Arkansas, supra,* 98 S.Ct. at 1179–80; *Buffalo Chief v. South Dakota,* 425 F.2d 271, 280 (8th Cir. 1970); *United States v. Wisniewski, supra,* 478 F.2d at 281–82; *Kaplan v. United States,* 375 F.2d 895, 897 (9th Cir.), *cert. denied,* 389 U.S. 839, 88 S.Ct. 67, 19 L.Ed.2d 103 (1967). In *Holloway v. Arkansas, supra,* the Supreme Court held that the trial court erred in refusing defense counsel's motion for appointment of separate counsel without at least taking adequate steps to ascertain whether the risk of a conflict of interest was too remote to warrant separate counsel. The Chief Justice stated for the Court that defense counsel's assertions as to a conflict of interest should normally be accepted because:

> An "attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." *State v. Davis, supra,* 110 Ariz., [29], at 31, 514 P.2d, [1025], at 1027. Second, defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem. *Ibid.* Finally, attorneys are officers of the court, and " 'when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.' " *State v. Brazile, supra,* 226 La., [254], at 266, 75 So.2d, [856], at 860–861. [Footnotes omitted.]

*Id.* at 1179–80. Furthermore, as noted above, prior to trial the defendants expressed their desire to have Burke remain as counsel knowing that he was also representing the other defendants.

 Our review of the record does not disclose any actual conflict of interest among the defendants in the trial. Nor did defendants' counsel alert the court to the fact that an actual conflict had surfaced during trial. Prior to trial the Assistant United States Attorney informed the court that no statements of one defendant would be used to implicate the other defendants, and no such statements were introduced at trial.[6] The defendants did not present any inconsistent defenses. Only one of the defendants testified at trial and she in no way incriminated the other defendants. On the contrary, the government's evidence showed that the defendants performed separate and distinct parts in the overall scheme. *Compare United States v. Donahue,* 560 F.2d 1039 (1st Cir. 1977), *and United States v. DeBerry,* 487 F.2d 448 (2d Cir. 1973), *and Austin v. Erickson,* 477 F.2d 620 (8th Cir. 1973) (actual conflict at trial), *with United States v. Alberti,* 470 F.2d 878 (2d Cir. 1972), *cert. denied,* 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973), *and United States v. Lovano,* 420 F.2d 769 (2d Cir.), *cert. denied,* 397 U.S. 1071, 90 S.Ct. 1515, 25 L.Ed.2d 694 (1970) (no actual conflict at trial).

The only assertion of actual conflict concerns a statement made by the Assistant United States Attorney in his final argument. Defendant Cox complained at the time of sentencing that Burke failed to correct the record when the Assistant United States Attorney, during arguments, stated that some money was placed in Cox's car when in fact the testimony indicated it was placed in a car left by defendant Wise. It would have been in keeping with sound trial strategy for Burke to have made no objection to the misstatement to avoid drawing attention to the incident. Furthermore, the jury was instructed that the arguments of the attorneys were not evidence in the case and that the jury was to consider only evidence presented by the parties in reaching a verdict. Finally, we observe that the evidence establishing defendant Cox's participation in the conspiracy is strong.

6. See the colloquy between the court and the Assistant United States Attorney which is set out at pages 320–321, *supra.*

As the First Circuit noted in *United States v. Foster, supra,* 469 F.2d at 4, "The possibility here that another approach might have been used, with better results for the defendant, exists in every case and is very far indeed from making out a deprivation of constitutional right." *Compare Austin v. Erickson, supra,* 477 F.2d at 626. This incident is simply not sufficient to demonstrate that an actual conflict of interest developed at trial which requires reversal.

Our decision rests upon alternate grounds. We conclude that there was a valid waiver by the defendants of any conflict of interest arising out of their joint representation. However, even if there had been no waiver the defendants have failed to show that any actual conflict, or evidence pointing to a substantial possibility of a conflict, resulted from their joint representation. This opinion should not be construed as lessening the requirements specified in *United States v. Lawriw, supra.* We reiterate that in all cases coming to trial after the *Lawriw* decision we will seldom, if ever, find a knowing and intelligent waiver of conflict of interest unless the trial court has specifically warned the defendants of the potential dangers of joint representation and the defendants are provided an opportunity to make inquiry of the trial court as to the nature and consequences of joint representation. *See United States v. Lawriw, supra,* 568 F.2d at 104–05.

Defendant Wise also claims that there was insufficient evidence to support the verdict of guilty against him. Wise concedes that the government proved the existence of a grain fraud conspiracy and that the substantive crimes of interstate transportation and sale of fraudulently procured property were committed. However, he argues that the evidence adduced at trial did not implicate him in the doing of these overt acts or helping others do these acts.

Our examination of this contention must begin with the established principles which require an appellate court "to view the evidence in the light most favorable to the government, and to give to the government the benefit of all reasonable inferences favorable to the government's case that logically may be drawn from the evidence." *United States v. Wisdom,* 534 F.2d 1306, 1309 (8th Cir. 1976). Furthermore, we are guided by the general rule that "it is not necessary that the evidence exclude every reasonable hypothesis except that of guilt but simply that it be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." *United States v. Shahane,* 517 F.2d 1173, 1177 (8th Cir.), *cert. denied,* 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975). Finally, the essential elements of the charge may be proved by circumstantial evidence as well as direct evidence since circumstantial evidence is intrinsically as probative as direct evidence. *See Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Joyner,* 539 F.2d 1162, 1165 (8th Cir.), *cert. denied,* 429 U.S. 983, 97 S.Ct. 499, 50 L.Ed.2d 593 (1976); *United States v. Shahane, supra,* 517 F.2d at 1177. As to the conspiracy charged in Count I of the indictment, the government aptly notes that the fact that Wise played a relatively minor role in the conspiracy does not have anything to do with his guilt or innocence. This court has repeatedly stated that "once the government has established the existence of a conspiracy, even slight evidence connecting a particular defendant to the conspiracy may be substantial and therefore sufficient proof of the defendant's involvement in the scheme." *United States v. Verdoorn,* 528 F.2d 103, 105 (8th Cir. 1976), *quoting from United States v. Overshon,* 494 F.2d 894, 896 (8th Cir.), *cert. denied,* 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974). *See also United States v. Smith,* 564 F.2d 244, 247 (8th Cir. 1977); *United States v. Schmaltz,* 562 F.2d 558, 560 (8th Cir.), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 315 (1977); *United States v. Losing,* 560 F.2d 906, 912 (8th Cir. 1977).

The evidence produced at trial revealed that: (1) Several of the truck drivers who were hauling the fraudulently procured grain met with Elvin Woody (the acknowledged head of the conspiracy) and

Wise in Topeka, Kansas. (2) Wise accompanied the drivers and Elvin Woody to Nebraska, where the hauling began. (3) During the time the scheme was working in Nebraska, Elvin Woody gave Joe Sixkiller (Woody's nephew and one of the drivers) a suitcase full of money to deliver to Wise. Sixkiller testified that Woody told him that Woody and Wise were supposed to split the money. (4) During that period Wise was with Elvin Woody and the drivers much of the time. (5) When the operation moved to South Dakota the drivers would meet with Elvin Woody, Cox, or Wise, or any combination of the three, at a motel or truck stop near where they unloaded the grain in Kansas City, Kansas. The drivers received instructions on where to go and were given checks to pay for the grain during these meetings. (6) On at least one occasion Wise picked up one of the drivers at a truck stop and drove him to the Holiday Towers in Kansas City, Kansas, where Elvin Woody was staying. (7) Wise was present on at least one occasion when defendant Cox forged the name "Richard Allen" on three checks and handed them to one of the drivers to use in payment for the grain. (8) One of the trucks used in South Dakota belonged to Wise. (9) On one occasion Wise joined Elvin Woody while he was cashing checks he received from an elevator. A paper sack containing the money was put in the trunk of a car driven by Wise, and Wise and Elvin Woody left together. We are satisfied that sufficient evidence was presented to warrant submission of the issue of Wise's participation in the grain fraud conspiracy to the jury.

This evidence was also sufficient to support Wise's conviction on the substantive violations charged in Counts II and III of the indictment as an aider and abettor. Moreover, as a participant in the conspiracy, Wise was guilty of substantive violations committed by his coconspirators in furtherance of the conspiracy by virtue of his membership in the conspiracy at the time the substantive violations were committed. *Pinkerton v. United States*, 328 U.S. 640, 645–48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Kaplan*, 554

F.2d 958, 964–65 (9th Cir. 1977); *United States v. Wood*, 544 F.2d 242, 264 (6th Cir. 1976), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 (1977); *United States v. Finkelstein*, 526 F.2d 517, 522 (2d Cir. 1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976).

The convictions of each of the three defendants on all three counts are affirmed.

Affirmed.