UNITED STATES of America, Appellee,

v.

Joseph Vincent AGOSTO, Appellant.

UNITED STATES of America, Appellee,

v.

Deil Otto GUSTAFSON, Appellant.

UNITED STATES of America, Appellee,

v.

Joan Lorrain NORRIS, Appellant.

Nos. 82–1057 to 82–1059.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 9, 1982.

Decided April 9, 1982.

Stanley I. Greenberg, a Law Corp., Los Angeles, Cal., Peter J. Thompson, Delaney, Thompson & Solum, Minneapolis, Minn., for appellant Joseph Vincent Agosto.

Joe A. Walters, Robert A. Brunig, William E. Flynn, Wood Kidner, O'Connor & Hannan, Minneapolis, Minn., for appellant Deil Otto Gustafson.

James M. Rosenbaum, U. S. Atty., Douglas A. Kelley, Thorwald H. Anderson, Jr., Asst. U. S. Attys., D. Minn., Minneapolis, Minn., for appellee.

Stephen Stein, Las Vegas, Nev., and Douglas W. Thomson, St. Paul, Minn., for appellant, Norris.

National Ass'n of Criminal Defense Lawyers, Inc., California Attorneys for Criminal Justice by Judd C. Iversen, Nina Wilder, San Francisco, Cal. (Alan Ellis, Co-Chairman, NACDL, Amicus Curiae Committee, Philadelphia, Pa., of counsel), for amicus curiae.

Before HEANEY, STEPHENSON * and ARNOLD, Circuit Judges.

HEANEY, Circuit Judge.

■ On November 5, 1981, six defendants were named in a 32-count indictment charging mail fraud, wire fraud, misapplication of bank funds, false entries on bank records and conspiracy. The defendants were arraigned on November 6. On November 20, the government filed a motion for inquiry concerning possible conflicts of interest of certain defense counsel. After a hearing, the district court, 528 F.Supp. 1300, disqualified three defense counsel. The defendants represented by those three defense counsel, and one defense counsel appeal.[1]

We affirm in part and reverse in part, and remand for further proceedings.

The indictment charged that the defendants used a check floating scheme to improperly obtain interest-free loans from Summit National Bank of St. Paul (Summit Bank-St. Paul) and Summit State Bank of Richfield (Summit Bank-Richfield) for the benefit of two business entities: the Tropicana Hotel and Country Club (Tropicana), a Las Vegas hotel and gambling casino, and Production and Leasing, Ltd. (P & L), a Nevada corporation that produced and provided the Folies Bergere floor show for the Tropicana.

The alleged participants in the scheme included:

---

* The Honorable Roy L. Stephenson assumed senior status on April 1, 1982.

1. In *In Re Multi-Piece Rim Products Liability Litigation*, 612 F.2d 377, 378 (8th Cir. 1980), *vacated sub nom. Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), we stated that an order granting a motion for disqualification was appealable under the collateral order doctrine. In vacating our decision on other grounds, the Supreme Court declined to express an opinion as to the appealability of disqualification orders. *Id.* at 372, n.8, 101 S.Ct. at 672.

The Supreme Court in *Firestone* concluded that an order denying a motion to disqualify counsel was not appealable. Subsequent to *Firestone*, at least one court has held an order disqualifying a criminal defense attorney likewise nonappealable. *United States v. Greger*, 657 F.2d 1109 (9th Cir. 1981). However, also subsequent to *Firestone*, the Ninth and Fifth Circuits found the grant of a disqualification motion appealable in a civil case. *In Re Coordinated Pretrial Proceedings in Petroleum Productions Antitrust Litigation*, 658 F.2d 1355 (9th Cir. 1981); *Duncan v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020 (5th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981). Prior to *Firestone*, several circuits had found orders granting disqualification in criminal cases appealable. *See, e.g., United States v. Dolan*, 570 F.2d 1177 (3d Cir. 1978); *United States v. Duklewski*, 567 F.2d 255 (4th Cir. 1977); *United States v. Armedo-Sarmiento*, 524 F.2d 591 (2d Cir. 1975); *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975). We find no compelling reason to distinguish between civil and criminal cases as to appealability here, and agree with those circuits finding such an order appealable.

(1) Deil Otto Gustafson, owner of a substantial interest in the Tropicana and owner of the Summit Banks.

(2) Joseph Vincent Agosto, owner of P & L.

(3) Joan Lorrain Norris, Agosto's executive secretary.

(4) Ralph Edwin Bruins, president of Summit Bank-Richfield and a consultant to Summit Bank-St. Paul.

(5) Roger Frank Newstrum, officer and employee of various Gustafson-owned companies, a corporate officer of the Tropicana, and a vice-president and director of the Summit Bank-Richfield.

(6) James Louis Bacigalupo, vice-president and cashier of Summit Bank-St. Paul.

The Tropicana allegedly received improper loans from Summit Bank-St. Paul by use of the bank as its depository bank for the Tropicana employees' federal withholding taxes. P & L allegedly did so by use of both banks as its depositories for federal taxes and by the opening of commercial checking accounts. The Tropicana and P & L made deposits to these accounts in the form of nonsufficient fund (NSF) checks. The banks treated the deposits as good and used bank funds to pay the Tropicana and P & L taxes and other obligations. When the checks were returned as dishonored, the banks would accept new NSF checks to replace them. The replacement checks would in turn be replaced by other NSF checks and the process would continue until, upon the intervention of one or more of the defendants, the checks would be paid.

Each defense counsel represented only one defendant at the time of his disqualification. The district court's disqualification orders were based upon defense counsel's *earlier* representation of multiple defendants and grand jury witnesses who would likely be trial witnesses. The district court found that there was a substantial possibility that conflicts of interest existed or would arise during trial with regard to each defendant involved and that the defendants did not effectively waive their right to counsel unimpeded by conflicts of interest. The court concluded that disqualification was required both under prevailing case law and the Code of Professional Responsibility.

## I

■ The district court is charged with the responsibility of supervising the members of its bar. *Cohen v. Hurley,* 366 U.S. 117, 123–124, 81 S.Ct. 954, 958, 6 L.Ed.2d 156 (1961); *Coffelt v. Shell,* 577 F.2d 30, 32 (8th Cir. 1978); *Central Milk Producers Co-op v. Sentry Food Stores, Inc.,* 573 F.2d 988, 992 (8th Cir. 1978); *Fred Weber, Inc. v. Shell Oil Co.,* 566 F.2d 602, 605 (8th Cir. 1977), *cert. denied,* 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978). Among the factors to be considered in exercising this responsibility are the ABA Code of Professional Responsibility,[2] the court's duty to maintain public confidence in the legal profession and its duty to insure the integrity of the judicial proceeding. In criminal cases, its power of supervision is guided by, and in some respects, limited by, a defendant's Sixth Amendment rights. *See United States v. Armedo-Sarmiento,* 524 F.2d 591, 592–593 (2d Cir. 1975).

■ The Sixth Amendment of the United States Constitution guarantees each defendant the "assistance of counsel for his defense." This guarantee includes the "right to 'the assistance of an attorney unhindered by a conflict of interest'." *Cuyler v. Sullivan,* 446 U.S. 335, 355, 100 S.Ct. 1708, 1722, 64 L.Ed.2d 333 (1980) (Marshall, J., concurring in part and dissenting in part) (quoting *Holloway v. Arkansas,* 435 U.S. 475, 483, n.5, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978)).

■ The Sixth Amendment also gives some protection to a criminal defendant's selection of retained counsel. As this Court stated in *United States v. Cox,* 580 F.2d 317, 321 (8th Cir. 1978), *cert. denied,* 439 U.S. 1075, 99 S.Ct. 851, 59 L.Ed.2d 43 (1979):

In general defendants are free to employ counsel of their own choice and the courts are afforded little leeway in interfering with that choice. *United States v. Valenzuela, supra,* 521 F.2d at 416, *United States v. Garcia,* 517 F.2d 272 (5th Cir. 1975); *United States v. Wisniewski,* 478 F.2d 274, 285 (2d Cir. 1973).

*Cf. Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

■ A facet of the right to counsel of choice is the defendant's ability to waive his

---

**2.** The Code of Professional Responsibility was adopted by the District of Minnesota pursuant to its Local Rule 1(c).

right to the assistance of counsel unhindered by a conflict of interest, provided that waiver is knowing and intelligent. *Holloway v. Arkansas, supra*, 435 U.S. at 483, n.5, 98 S.Ct. at 1178; *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942); *United States v. Lawriw*, 568 F.2d 98, 104 (8th Cir. 1977), *cert. denied*, 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978).

■ Thus, in assessing the merits of a disqualification motion, the court must balance:

individual constitutional protections, public policy and public interest in the administration of justice, and basic concepts of fundamental fairness.

*United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975).

Most conflict of interest issues in criminal cases are raised at the post-conviction stage, where the inquiry focuses on whether the defendant has made a showing of harm sufficient to require reversal of his conviction. *See, e.g., Cuyler v. Sullivan, supra*, 446 U.S. at 350, 100 S.Ct. at 1719 [no objection made at trial; the Supreme Court held the defendant must demonstrate that "an actual conflict adversely affected his lawyer's performance"]; *United States v. Lawriw, supra*, 568 F.2d at 101 [showing of actual conflict or evidence pointing to substantial possibility of conflict]; *United States v. Valenzuela*, 521 F.2d 414, 416 (8th Cir. 1975), *cert. denied*, 424 U.S. 916, 96 S.Ct. 1117, 47 L.Ed.2d 321 (1976).

Here, we are concerned with the power of the district court to disqualify counsel *before* conflict results in ineffective assistance of counsel. At this stage in the proceedings, there is of necessity less certainty as to whether conflicts will actually arise and as to the nature of those conflicts. This is particularly so where the government files a motion for disqualification early in the proceedings.

■ Because the task of assessing the potential for conflict well in advance of trial is such a difficult one, the standards applicable to making that assessment must be flexible. We find such flexibility in

F.R.Cr.P. 44(c), which requires that in cases of multiple representation [where an attorney simultaneously represents two or more defendants], the district court shall conduct an inquiry prior to trial to determine the potential for conflicts of interest. Rule 44(c) provides in pertinent part that

[u]nless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

The Advisory Committee Note, 77 F.R.D. 507, 600–601 (1978), states that

Rule 44(c) does not specify what particular measures must be taken. It is appropriate to leave this within the court's discretion, for the measures which will best protect each defendant's right to counsel may well vary from case to case.

■ Although this is a case of successive representation [where an attorney representing a defendant has previously represented codefendants or trial witnesses], we find that Rule 44(c) also establishes a suitable framework for the district court's exercise of responsibility in assessing possible conflicts here.[3] The goal of Rule 44(c) is the protection of the defendant's right to counsel. As we noted above, protection of that right extends to the selection of retained counsel.[4] Thus, the chosen method for dealing with a potential conflict, in the absence of an acceptable waiver, is the one which will alleviate the effects of the conflict while interfering the least with defendant's choice of counsel.

■ Finally, this Court's scope of review is limited. As we stated in *Coffelt v. Shell, supra*, 577 F.2d at 32:

In matters concerning the supervision of members of its bar, "the finding of the district court will be upset only upon a showing that abuse of discretion has taken place." *Fred Weber, Inc. v. Shell Oil Co., supra*, 566 F.2d [568] at 605, quoting from *Hull v. Celanese Corp., supra*, 513 F.2d at 571. "Moreover, in the disqualification situation, any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp., supra*, 513 F.2d at 571.

---

3. We apply only the last sentence of F.R.Cr.P. 44(c) to this case of successive representation. We do not here decide that the remainder of Rule 44(c), which, *inter alia*, imposes an affirmative duty on the district court to hold a hearing on the possibility of conflicts, is applicable to all cases of successive representation.

4. The right to retained counsel of choice is not absolute, *see United States v. Cox*, 580 F.2d 317, 321 (8th Cir. 1978), *cert. denied*, 439 U.S. 1075, 99 S.Ct. 851, 59 L.Ed.2d 43 (1979), but must be protected if possible.

## II

Thus, the first inquiry is whether there is good cause to believe that a conflict of interest is likely to arise. If so, the next inquiry is whether the district court made the appropriate response. Before assessing the potential for conflict, we examine the nature of the potential conflicts.

 A major course of conflicts in both successive and multiple representation cases is the attorney's receipt of privileged information from a witness or codefendant.[5] Canon 4 of the Code of Professional Responsibility requires a lawyer to preserve the confidences and secrets of a client. Canon 5 requires a lawyer to exercise independent professional judgment on behalf of a client. When an attorney attempts to represent his client free of compromising loyalties, and at the same time preserve the confidences communicated by a present or former client during representation in the same or a substantially related matter, a conflict arises.

 In the successive representation situation, privileged information obtained from the former client might be relevant to cross-examination, thus affecting advocacy in one of two ways:

(a) the attorney may be tempted to use that confidential information to impeach the former client; or

(b) counsel may fail to conduct a rigorous cross-examination for fear of misusing his confidential information.

*United States v. Jeffers*, 520 F.2d 1256, 1264–1265 (7th Cir. 1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 423, 46 L.Ed.2d 656 (1976). The second major possibility of conflict in the successive representation situa-

tion is that the attorney's pecuniary interest in possible future business may cause him to make trial decisions with a view toward avoiding prejudice to the client he formerly represented. *Id.*

We turn now to a discussion of each attorney-client relationship to determine whether any of these conflicts is likely to arise.

### Attorney Joe A. Walters

Mr. Walters represented defendant Gustafson until his disqualification. He represented defendant Bruins until his indictment, and defendant Newstrum until after his arraignment. He also represented six individuals in connection with their appearances before the grand jury; the government has represented that those six individuals will probably testify at trial.

(a) *Grand jury witnesses.*

 The district court made no finding, and there is no evidence in the record to support a finding that attorney Walters may be motivated by pecuniary interests involving any of the six grand jury witnesses. The district court did, however, find a strong possibility of conflict on the basis of confidential information imparted to Walters during the course of his representation of the grand jury witnesses. The court relied upon an irrefutable presumption that confidences were disclosed, citing *United States v. Provenzano*, 620 F.2d 985, 1004–1005 (3d Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980); *Arkansas v. Dean Foods Products Co., Inc.*, 605 F.2d 380, 383–384 (8th Cir. 1979); and *Fred Weber, Inc. v. Shell Oil Co., supra*, 566 F.2d at 608. It did so notwithstanding the fact that all six grand jury witnesses represent-

---

**5.** Multiple representation presents greater possibilities of conflict than successive representation. The possibilities of conflict inherent in a case of multiple representation include:

(1) in planning and executing trial strategy, the attorney may make decisions favoring one defendant over another;

(2) the fact that an attorney appears on behalf of a group of defendants may make some defendants appear guilty by association;

(3) at the plea bargaining stage, the attorney's recommendation to each defendant might

be affected by an assessment of the effect of the plea on the other defendant;

(4) in offering defenses at trial, the attorney may harm one or more defendants. If he steers a neutral course, he may deny the less culpable defendants the chance to blame other defendants. If he does attempt to implicate one defendant more heavily, he frustrates that defendant's right to effective assistance of counsel. *Developments in the Law-Conflicts of Interest in the Legal Profession*, 94 Harv.L.Rev. 1244, 1381–1383 (1981).

ed by Walters submitted affidavits to the district court in which they stated that they did not consider their communications to Walters to be confidential.

 In our view, the district court erred in applying the irrefutable presumption doctrine under these circumstances. The doctrine was developed primarily to protect the attorney-client privilege of a former client of the attorney whose disqualification was sought; to require the former client to prove that he made confidential communications to his attorney would result in destruction of the privilege. The doctrine is linked to the rule originated in *T. C. Theatre Corp. v. Warner Brothers Pictures, Inc.*, 113 F.Supp. 265 (S.D.N.Y. 1953), proscribing the successive representation of clients with adverse interests where the matters are substantially related. This rule has been widely accepted by federal courts in civil cases, including this Court in *Fred Weber, Inc. v. Shell Oil Co., supra.* See *Developments in the Law-Conflicts of Interest*, 94 Harv.L.Rev. 1244, 1317 n.168 (1981) [hereinafter cited as *Developments-Conflicts of Interest*]. The irrefutable presumption doctrine should not be invoked as to a knowledgeable client who maintains that, in fact, no confidential communications were made. See *United States v. FMC Corp.*, 495 F.Supp. 172, 173 (E.D.Pa. 1980). The grand jury witnesses included a bookkeeper, three accountants and two secretaries. Each of these occupations requires considerable intelligence, and there is no evidence in the record that any of these witnesses lacked the ability to discern whether, in this particular situation, he or she had made confidential communications to Walters.

Furthermore, Walters submitted an affidavit in which he stated that his representation of the grand jury witnesses was essentially limited to assisting them in the assembly of documents and records subpoenaed by the grand jury, of advising them of their rights and obligations before the grand jury, and of being available outside of the grand jury room during their testimony. He stated that at no time did the grand jury witnesses disclose information to him regarding themselves which they would consider confidential. Walters' description of his representation of these witnesses, as well as his statement that no confidential communications had been made to him by any of the six, lends credence to the knowledgeability of the witnesses' representation.[6] Courts generally give substantial weight to defense counsel's representations regarding conflicts of interest. *United States v. Cox, supra*, 580 F.2d at 322. See *Cuyler v. Sullivan, supra*, 446 U.S. at 347, 100 S.Ct. at 1717.

We hold that at most Walters' former representation of grand jury witnesses presents the very remote possibility of a conflict, insufficient to warrant the disqualification of defendant Gustafson's attorney of choice.

(b) *Codefendants.*

In connection with its motion for inquiry regarding possible conflicts of interest, the government submitted copies of statements given to the FBI by defendants Bruins and Newstrum. In those statements, Bruins and Newstrum indicated lack of knowledge of certain aspects of the alleged scheme.

---

**6.** There are at least two explanations for the willingness of the witnesses to state that no confidential communications were made. The more likely one here is that Walters' representation was of a limited, peripheral nature and that he, therefore, was in no position to acquire confidences. See, e.g., *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 756–757 (2d Cir. 1975). The second is that the interests of the grand jury witnesses are not adverse to those of the defendants. As stated in *Developments-Conflicts of Interest, supra*, 94 Harv.L.Rev. at 1324–1325:

the only person likely to know and care about the breach of confidentiality is the former client; thus it may be expected that the issue will generally be raised only when the representations are adverse and the interests of the former client thereby threatened.

In this particular case, it would be difficult to assess the adversity of interests as between Gustafson and the grand jury witnesses prior to trial.

The district court concluded that Gustafson, Bruins and Newstrum may take inconsistent positions with respect to culpability at trial. It cited the following possible conflicts which could arise should defendants take such inconsistent positions: (1) cross-examination of defendants Bruins and Newstrum, (2) planning of trial strategy, (3) arguing of relative culpability of defendants to the jury, and (4) the questioning of other witnesses regarding the defendants' participation in the crime charged. It concluded that the possibility that defendants may present inconsistent defenses was sufficient to require disqualification.

The duty of loyalty set forth in Canon 5 and the duty to preserve a former client's confidences set forth in Canon 4 combine here to create the potential communications from Bruins and Newstrum. *See, e.g., United States v. Provenzano, supra,* 620 F.2d at 1005; *Arkansas v. Dean Foods Products Co., supra,* 605 F.2d at 384–385; *United States v. Kitchin,* 592 F.2d 900, 904 (5th Cir.) (adopting district court's findings and conclusions), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979). Furthermore, attorneys for both Bruins and Newstrum have indicated that their clients decline at this time to waive their attorney-client privilege.

In view of these facts and assuming that the defendants will take inconsistent positions at trial, the two-fold conflict noted in *United States v. Jeffers, supra,* is clearly a possibility: (1) Walters may be tempted to use confidential information to the detriment of his former clients, and (2) he may overcompensate and fail to cross-examine fully for fear of misusing confidential information. Thus, two separate inquiries must be made: whether the potential danger to defendants Bruins and Newstrum requires disqualification by the court in the exercise of its responsibility to ensure compliance with ethical standards and insure the fairness of the trial, and whether the potential damage to defendant Gustafson endangers his right to effective assistance of counsel, so that disqualification is warranted to secure his Sixth Amendment protection as well as to enforce ethical standards. We turn to those inquiries.

(1) *Representation detrimental to Bruins and Newstrum.*

In civil cases, the general rule is that Confidential disclosures, actual or presumed, necessitate disqualification of the attorney when he represents an adverse interest in a related matter.

*Arkansas v. Dean Foods Products Co., Inc., supra,* 605 F.2d at 384–385. Disqualification may, however, be avoided where the former client consents to his attorney's subsequent representation of adverse interests. *Developments-Conflicts of Interest, supra,* 94 Harv.L.Rev. at 1333. *See* Proposed Final Draft of the Model Rules of Professional Conduct, Rule 1.9 (May 30, 1981).

In the criminal context, disqualification on the basis of the attorney's receipt of privileged information from a codefendant formerly represented by that attorney should only be considered upon a clear showing that the present and former clients' interests are adverse. Here, there has been no such showing. Gustafson, Norris and Agosto all contend that all of the defendants intend to present a joint defense, and that there, therefore, is no adversity of interests. While defendants Bruins and Newstrum are not on the record as joining in this contention, it appears that they were never asked to state their position. We find that the district court erred in rejecting appellants' assertion of intent to present a joint defense without conducting further inquiry into its validity. On remand, we direct that further inquiry take place.

Assuming that after further inquiry the district court is satisfied that a clear showing has been made that the interests of defendants Bruins and Newstrum are adverse to the interest of Gustafson, we instruct the district court to consider whether there exists a means of eliminating the potential conflict less burdensome than disqualification. As we noted earlier, a client may consent to his former attorney's representation of adverse interests. Gustafson contends that Bruins and Newstrum

have no objection to Walters' continued representation, and proposes employment of a backup attorney to cross-examine Bruins and Newstrum and do whatever else would be necessary to alleviate the conflict should their interests ever prove adverse.[7] We note that Bruins and Newstrum never filed a motion for Walters' disqualification and never actively supported the government's motion. Under these circumstances, we hold that the district court should inquire of defendants Newstrum and Bruins as to their willingness to consent to Walters' continued representation of Gustafson, and use of backup counsel.[8] If Newstrum and Bruins are willing to consent, we see no reason to reject Gustafson's proposal to employ a backup counsel as a satisfactory resolution of the conflict. If they do not consent, however, and there is a clear showing of adverse interests,[9] then we concur in the district court's exercise of discretion and disqualify attorney Walters.

(2) *Failure to fully cross-examine for fear of misusing confidential information.*

██ The second potential for conflict is that attorney Walters may overcompensate and fail to fully cross-examine defendants Bruins and Newstrum for fear of misusing confidential information. Gustafson contends that employment of backup counsel to conduct cross-examination will effectively resolve the possibility of this conflict also. We are concerned, however, that after the trial of this case, should Gustafson be convicted, he may be moved to file a post-conviction motion alleging ineffective assistance of counsel because backup counsel did not have as full a degree of familiarity with the issues and facts as did Walters and, therefore, did not effectively cross-examine the witnesses. In conjunction with its further consideration of Gustafson's offer to employ backup counsel, should the court decide that Walters need not be disqualified on the basis of his former representation of Bruins and Newstrum, we instruct the court to require Gustafson to waive his right to effective assistance of counsel, insofar as that right may be impinged upon by Walters' conflicts of interest and the need to employ backup counsel to alleviate those conflicts.

## Attorney Stanley Greenberg

Mr. Greenberg represented defendant Agosto until his disqualification, and defendant Norris in appearances before Las Vegas and Minnesota grand juries. He also represented one potential trial witness in connection with that witness's appearance before a Las Vegas grand jury.

(1) *Grand jury witness.*

Again the court relied upon the irrefutable presumption that the grand jury witness disclosed confidences to Greenberg. Again we hold that the district court erred in doing so.

The record includes statements by both Greenberg and the grand jury witness, Albert L. Bardier, a certified public accountant, that Bardier communicated no confidential information to Greenberg. Further-

---

**7.** There is precedent for Gustafson's proposal. *See United States v. Jeffers,* 520 F.2d 1256, 1266 (7th Cir. 1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 423, 46 L.Ed.2d 656 (1976); *Tague, Multiple Representation and Conflicts of Interest in Criminal Cases,* 67 Geo.L.J. 1075, 1115 (1979).

**8.** If Bruins and Newstrum do consent, they will in effect waive any future objections they may have to the fairness of their trial arising as a result of Walters' continued representation of Gustafson and employment of backup counsel. Thus, in order for the consent to be effective, we hold that it should fulfill all the standards of a knowing and intentional waiver of a constitutional right.

**9.** If the district court determines that the interests of the defendants are not adverse, it will only be because all defendants, including Bruins and Newstrum, represent that they intend to present a joint defense and that there are, therefore, no conflicts of interest. Under these circumstances, we consider it appropriate to require Bruins and Newstrum to execute an informed consent to Walters' continued representation of Gustafson, and use of backup counsel if necessary. In this way, the interest of the district court in insuring the integrity of the proceedings from post-conviction attack will be protected should the defendants prove wrong in their assessment of trial strategy.

more, the record reflects that Greenberg's representation of Bardier was limited. Bardier was subpoenaed in his capacity as custodian of certain business records of P & L to produce a variety of documents before a federal grand jury in Las Vegas, Nevada. His testimony was limited to describing and authenticating the documents produced; he gave no substantive testimony at that time. He stated, and Greenberg affirmed, that Greenberg's representation was limited to advice concerning procedural aspects of the grand jury proceeding. Finally, Bardier stated that he was willing to waive his attorney-client privilege on cross-examination.

On the basis of this record, we see no reason to reject both sides' representations that no confidential communications were made by Bardier to Greenberg. Furthermore, in view of Bardier's willingness to waive the attorney-client privilege, we do not see even a possibility of conflict.

### (2) *Representation of codefendant Norris.*

Greenberg represented defendant Norris in connection with her appearance before the Las Vegas federal grand jury. He also represented Norris for a portion of the pre-indictment period in this case; his representation of Norris ceased approximately four months before the return of the indictment.

The district court, in disqualifying Greenberg from representing defendant Agosto, again based its decision on the possibility that the defendants may take inconsistent positions with respect to culpability at trial,

and that Greenberg's former representation of Norris will, therefore, create the same potential for conflict as noted above for defendant Gustafson. Unlike defendant Gustafson, who declined at this stage of the proceedings to waive his Sixth Amendment right to an attorney unhindered by conflicts of interest, defendant Agosto did attempt to make such a waiver. The district court found the waiver ineffective. It determined first of all that Greenberg advised his client that no conflict exists or is likely to arise, that accordingly Agosto's waiver was premised on his belief that there will likely be no impairment of his right to effective assistance of counsel, and that his waiver, insofar as it was based on counsel's advice, could not constitute a knowing and intelligent waiver.

We disagree. The record reflects that Greenberg made as full a disclosure as possible under the circumstances of this case regarding possible conflicts.[10]

The court in rejecting Agosto's waiver also held that counsel is often in no better position than is the court to foresee potential conflicts, citing *United States v. Carrigan*, 543 F.2d 1053, 1058 (2d Cir. 1976) (Lumbard, J., concurring), and *United States v. Garafola*, 428 F.Supp. 620, 625 (D.N.J.1977), aff'd sub nom. *United States v. Dolan*, 570 F.2d 1177 (3d Cir. 1978), and that

[t]he court did its best to explain to these defendants the dangers of joint representation. This explanation was defective because the court was not in a posi-

---

**10.** In a statement filed with the district court, Greenberg represented that he advised Agosto of Norris's and Bardier's attorney-client privilege, and the ramifications of their invocation of that privilege in relation to Agosto's defense. He then stated:

There appears to be very little concern on the part of any of the parties since the interests of Ms. Norris and Mr. Agosto appear to be identical to everyone who is familiar with the facts of the case. However, out of an abundance of caution, I have identified and explored with both Mr. Agosto and Ms. Norris and her attorney certain possibilities, including the possibility that conflicting defenses might be presented, or that inconsistent pleas might be entered. I have further dis-

cussed the possible impact of any conflicts in testimony or any arguments that might be raised with respect to differences in their respective degrees of involvement. We have also discussed possible differences in tactical considerations that may arise at trial, including the calling of witnesses, the interrelationship of defenses with other defendants, trial tactics involved in cross-examining witnesses, and any strategies that may develop in connection with interpreting evidence during final arguments to the jury. As a result of these discussions, I believe that there is no possibility that conflicting defenses will be presented, and that neither Mr. Agosto nor Ms. Norris will move to vacate their previously entered pleas of not guilty.

tion to adequately advise them of all of the foreseeable prejudices simply because the court does not know them all and, at this early stage of the proceedings, could not reasonably predict them so as intelligently to advise defendants. In my view, defendants Agosto and Norris did not, and at this early stage probably could not, knowingly waive their sixth amendment rights.

In the pretrial context, it is impossible to describe in full detail the conflicts which may arise during the trial. However, we reject the adoption of a per se rule that because of this fact, no defendant may make a knowing and intelligent waiver of his right to assistance of counsel unimpeded by conflicts of interest prior to trial. We conclude that in this case the nature of the potential conflicts has been sufficiently communicated to Agosto and he may, therefore, make a knowing and intelligent waiver. Furthermore, we have carefully examined the record and have concluded that defendant Agosto's waiver was knowing and intelligent. We, like the district court, question the advisability of Agosto's choice. However, he is fully capable of making that choice, and we have not been given adequate reason to reject it.

The sole remaining justification for disqualification is that Greenberg may represent Agosto to the detriment of Norris, breaching Canons 4 and 5 of the Code of Professional Responsibility, and that his disqualification is, therefore, an appropriate exercise of the district court's supervisory power. As we noted with respect to attorney Walters' former representation of defendants Newstrum and Bruins, a client may consent to his attorney's representation of adverse interests. We instruct the district court to inquire as to whether Norris will give a consent to Greenberg's repre-

sentation of Agosto.[11] If she refuses, the district court should consider whether disqualification is warranted for this reason alone.

### Attorney Stephen Stein

Stein represented defendant Norris until his disqualification. He also represented defendant Agosto preceding the indictment in this and other matters over the last six years. Finally, he represented five individuals in connection with their testimony before the grand jury. The government has represented that those five individuals will probably be called as witnesses at trial.

The conflict problems presented here differ substantially from those we have just discussed.[12] The primary loyalty of attorneys Walters and Greenberg has always been to the clients they now seek to represent—Gustafson and Agosto. Certainly, these attorneys' pecuniary interests lie in continued representation of those clients. Such is not the case with Stein, who has a long history of representation of defendant Agosto. Stein represented Agosto's interests on behalf of several corporations during the period of the investigation leading to the instant indictment [on "procedural matters only"]. He also represented Agosto on certain civil matters over the past six years, on certain matters before the Nevada Gaming Commission and on a dispute with the Immigration and Naturalization Service. He also represented the Tropicana for an extended period of time up to and including 1979. From the past and present pattern of representation, the long term pecuniary interests of Stein and of his law firm appear to lie with Agosto.[13]

Stein represented to the district court, and to this Court, that he can put these considerations aside and represent Norris to the fullest. We have no reason to question

---

11. Since we affirm the district court's disqualification of Norris's attorney, we pointed out that any inquiry of Norris as to her willingness to consent to Greenberg's continued representation of Agosto should be delayed until her new counsel is in a position to render her the appropriate advice.

12. Here again, the possibility of conflict arising as a result of Stein's former representation of

grand jury witnesses is highly remote and insufficient to warrant Stein's disqualification. Those witnesses stated that no confidential communications had been made, and that they had no objection to undergoing full cross-examination.

13. Although the record is not clear as to whether Stein currently represents defendant Agosto on unrelated matters, there is reference in the

Stein's good faith in making this representation; we are concerned, however, with the inherent difficulties in carrying it out.

The record does not reflect that Norris understood the possible consequences of Stein's divided loyalties. It is clear that Norris's understanding of possible conflicts was centered on the possibility of prior confidential communications between Stein and grand jury witnesses and codefendants, and not on the possibility of divided loyalties. Therefore, her waiver was not an effective one. Moreover, no arrangement has been proposed by which Stein can avoid the problem of divided loyalties and we cannot conceive of one. Norris is a secretary to Agosto and might have defenses very much in conflict with ones taken by Agosto. An irreconcilable conflict arises from one-time representation of Norris by a lawyer with well established loyalties to and prospective interests in representing Agosto. We, therefore, affirm the district court's disqualification of attorney Stein.

Judgment affirmed in part and reversed in part. The case is hereby remanded for further proceedings consistent with this opinion.

record to the fact that Stein's law partner does have a continuing relationship with defendant Agosto. Moreover, Norris testified that she will have difficulty even paying Stein's fees in the present matter. The inescapable appearance is that Stein's representation of her might be subsidized directly or indirectly by representation of Agosto on other matters.