_____

95-3001
_____

United States of America,          *
                                    *
     Appellee,                      *
                                    *   Appeal from the United States
     v.                             *   District Court for the
                                    *   Eastern District of Missouri.
Raymond H. Flynn,                   *
                                    *
     Appellant.                     *

_____

Submitted:   April 9, 1996

Filed:   July 1, 1996
_____

Before BEAM and MURPHY, Circuit Judges, and BURNS,[*] District Judge.
_____

MURPHY, Circuit Judge.


     Raymond H. Flynn appeals from the denial by the district court[1] of
his motion under 28 U.S.C. § 2255 to vacate, correct, or set aside his
sentence.  He asks for "all relief to which he may be entitled" or a new
trial based on unconstitutional jury instructions, ineffective assistance
of counsel, and the nondisclosure of certain exculpatory evidence.  We
affirm.


     Flynn was indicted for participating in an organization directed by
Paul Leisure which was charged with committing several

_____

[*]The HONORABLE JAMES M. BURNS, United States District
Judge for the District of Oregon, sitting by
designation.

[1]The Honorable George F. Gunn, Jr., United States District
Judge for the Eastern District of Missouri.

violent crimes in order to maintain control of certain labor unions and to retaliate against rival groups. According to the indictment, these crimes included the car bomb murders of Paul Spica and George "Sonny" Faheen and a conspiracy to murder James Anthony Michaels III and others.

Following a jury trial in 1987, Flynn was convicted of racketeering under the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1962(c), conspiring to violate RICO, 18 U.S.C. § 1962(d), and illegally using explosives and transporting them interstate, 18 U.S.C. § 844(d). He was sentenced to twenty years imprisonment for racketeering, twenty years concurrently for conspiracy, and forty-five years concurrently on the explosives count. The convictions on the RICO and conspiracy counts were affirmed, but that on the explosives count was reversed because of insufficient evidence of interstate transportation. United States v. Flynn, 852 F.2d 1045 (8th Cir.), cert. denied, 488 U.S. 974 (1988).

On his § 2255 motion, Flynn argued that his due process rights were violated by errors in the jury instructions, that he was denied effective assistance of trial and appellate counsel, that he should have had a hearing in the trial court on whether his counsel had a conflict of interest, that the prosecution failed to disclose Brady material, and that telephone conversations and electronic surveillance were improperly sealed. Following an evidentiary hearing and a report and recommendation denying relief, the district court adopted the report and ordered that Flynn's § 2255 motion be denied. Flynn renews the majority of his claims on appeal, as set forth in detail below.

**I.**

Flynn argues that jury instructions for Count I were unconstitutional because they did not require the jury to make a

2

unanimous finding as to the two predicate acts necessary for a RICO violation. According to Flynn, the complexity of his case rendered it highly probable that the jury did not find beyond a reasonable doubt every element necessary to constitute a RICO violation, as required by the Fifth Amendment due process clause. See Cupp v. Naughten, 414 U.S. 141, 148 (1973). He also contends that it was entirely probable that the jury did not unanimously agree on the predicate acts Flynn committed, which violated his Sixth Amendment right to a unanimous jury verdict. See Andres v. U.S., 333 U.S. 740, 748 (1948) (jury unanimity constitutionally required for a guilty verdict in federal criminal cases); Johnson v. Louisiana, 406 U.S. 356, 371 (1972) (Powell, J., concurring); United States v. Eagle Elk, 820 F.2d 959, 961 (8th Cir.), cert. denied, 484 U.S. 867 (1987).

Since Flynn did not challenge the instructions at trial or on direct appeal, he may not obtain collateral relief unless he shows both cause excusing his double procedural default and actual prejudice. United States v. Frady, 456 U.S. 152, 168 (1982). A court need not determine whether cause has been established if the defendant has failed to demonstrate actual prejudice. Id.

Actual prejudice can be shown if the challenged instruction "so infected the entire trial that the resulting conviction violates due process." Id. at 169. An instruction that is undesirable, erroneous, or even universally condemned is not sufficient reason for relief. Id. A defendant must show that the instructional error actually and substantially disadvantaged his entire trial, not merely that it created a possibility of prejudice. Id. at 170. The adequacy of the instructions must be evaluated as a whole. Id. at 169; United States v. Butler, 56 F.3d 941, 945 (8th Cir.), cert. denied, 116 S.Ct. 322 (1995).

Count I charged Flynn with committing three predicate acts in violation of RICO: (1) conspiracy to murder, and the murder, of

3

John Paul Spica; (2) conspiracy to murder James Anthony Michaels III and others; and (3) conspiracy to murder, and the murder, of George "Sonny" Faheen. In order to convict Flynn on this count, the government had to prove that he participated, either directly or indirectly, in an enterprise affecting interstate commerce through a pattern of racketeering activity involving two or more predicate acts. 18 U.S.C. §§ 1961(5) and 1962(c); United States v. Ellison, 793 F.2d 942, 949-50 (8th Cir.), cert. denied, 479 U.S. 937 (1986). The government also had to prove that the charged predicate acts were related to the affairs of the enterprise and were of an ongoing and continuous nature. Id. at 950.

Several instructions covered key RICO provisions. Instruction 20 stated that in order to establish a RICO violation, five essential elements must be established beyond a reasonable doubt, including commission of, or aiding and abetting, at least two acts of racketeering activity as alleged in Count I. Instruction 25 told the jurors that they must find beyond a reasonable doubt that Flynn committed a particular racketeering act and "must be unanimous in [their] decision whether he did so by conspiracy to murder, by murder, or by both." It also instructed that if Flynn committed such an act both by conspiracy to murder and murder, it would count as only one racketeering act. Finally, Instruction 29 required the jury to find beyond a reasonable doubt that Flynn

> committed or aided and abetted in the commission of at least two of the predicate acts set out in Count I and you must unanimously agree that at least two of the predicate acts were committed by that defendant.

Regardless of whether Flynn could establish cause to excuse his procedural default,[2] he has not shown a substantial likelihood

---

[2]Flynn's argument for cause is that his counsel was ineffective in not objecting to the instructions at trial or challenging them on appeal. His substantive claim for ineffective assistance of
counsel in regard to the jury instructions is discussed in the next section.

4

that the challenged jury instructions actually prejudiced him at trial. See Frady, 456 U.S. at 174. In accordance with the Fifth Amendment, the jury was instructed it could convict Flynn of violating RICO only if it found beyond a reasonable doubt every element of the offense, including the commission of at least two predicate acts. See Cupp, 414 U.S. at 148. The jury was also instructed that it "must be unanimous in its decision" that Flynn committed a predicate act and "unanimously agree that at least two of the predicate acts" in Count I were committed by Flynn. Although it would have been desirable if the instructions had in addition stated that the jury must be "unanimous as to which acts" it believed the defendant had committed, see, e.g., Devitt, Blackmar and O'Mally, Federal Practice and Jury Instructions § 48.06, the mere possibility that the jurors might not have unanimously agreed on the particular acts Flynn committed does not violate the Sixth Amendment. See Eagle Elk, 820 F.2d at 961. When viewed as a whole, the instructions were not incorrect or misleading. See Frady, 456 U.S. at 169; Butler, 56 F.3d at 945; see also Flynn, 852 F.2d at 1052 (jury had been "properly instructed" as to both RICO counts against Flynn).

Moreover, Flynn has not shown that he is innocent of the RICO violation and that a fundamental miscarriage of justice would result from his conviction. See Frady, 456 U.S. at 172; Flynn, 852 F.2d at 1052-54 (there was "no reason to believe" that Flynn was convicted for crimes in which he did not participate). Since Flynn has failed to show that the instructions infected "his entire trial with error of constitutional dimensions," the district court properly denied him relief on this claim. Frady, 456 U.S. at 170.

5

**II.**

Flynn also raises several claims of ineffective assistance of counsel. In order to succeed on these claims, Flynn must show his counsel's performance was professionally unreasonable, and also a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 691, 694 (1984). If Flynn fails to prove unreasonable performance, then the prejudice prong need not be considered, and vice versa. Stokes v. Armontrout, 851 F.2d 1085, 1092 (8th Cir. 1988), cert. denied, 488 U.S. 1019 (1989).

In reviewing counsel's performance, there is a strong presumption that all significant decisions fell within "the wide range of professionally competent assistance." Strickland, 466 U.S. at 689. The correct inquiry is not whether counsel's decision was correct or wise, but whether it "was an unreasonable one which only an incompetent attorney would adopt" considering all the circumstances. Stokes, 851 F.2d at 1092. Prejudice, for purposes of an ineffective assistance of counsel claim, means that "one's confidence in the outcome of the trial is undermined." Simmons v. Lockhart, 915 F.2d 372, 378 (8th Cir. 1990).

Flynn bases his first claim of ineffective assistance on his counsel's failure to object to the jury instructions at trial or raise the issue on direct appeal. As discussed previously, the jury instructions did not violate Flynn's due process rights or the Sixth Amendment unanimity requirement. The instructions, taken as a whole, were not incorrect. His counsel's actions in regard to these instructions were therefore not objectively unreasonable or prejudicial under the Sixth Amendment. See Strickland, 466 U.S. at 697.

Flynn next contends that his trial attorney's prior

6

representation of a government witness named Jesse Stoneking created a conflict of interest. Flynn points out that his attorney had represented Stoneking in the past and did not touch on his criminal history when cross examining him. Flynn also contends that the trial court inadequately inquired about the possibility of a conflict of interest.

Counsel breaches the duty of loyalty to a client when burdened with an actual conflict of interest. Id. at 692. Prejudice is presumed if a defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." Id., citing Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). In determining whether a conflict of interest exists, substantial weight is given to defense counsel's representations. United States v. Agosto, 675 F.2d 965, 972 (8th Cir. 1982).

The mere fact that a trial lawyer had previously represented a prosecution witness does not entitle a defendant to relief. Simmons, 915 F.2d at 378. The defendant must show that this successive representation had some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one. Id. An example may be where counsel's cross-examination of a former client is impeded for fear of misusing confidential information. Agosto, 675 F.2d at 971.

A trial court has flexibility in making the difficult assessment of the potential for conflict. Id. at 970. There is no affirmative duty to hold a hearing on the possibility of conflicts in all cases of successive representation. Id. at 970 n.3. Rather, "the chosen method for dealing with a potential conflict, in the absence of an acceptable waiver, is the one which will alleviate the effects of the conflict while interfering the least with defendant's choice of counsel." Id. at 970.

7

The record does not support Flynn's claim that his lawyer's previous representation of Stoneking actually and adversely affected his defense. The lawyer had not represented Stoneking for some years prior to Flynn's trial in 1987,[3] and there is no indication that he had useful information not employed in cross-examination. See id. at 972. Substantial weight must also be accorded the attorney's representations. Id. When asked by the trial judge if he had worked out the Stoneking problem, he had responded that the situation had been "neutralized." In his affidavit,[4] the attorney also stated he had "felt no inhibitions" in cross-examining Stoneking, that he "had no conflict of interest at the time of [his] representation of Mr. Flynn, and that at no time was [his] complete and utmost representation of Mr. Flynn obstructed, restricted, or constrained by [his] prior representations of Mr. Stoneking."

The attorney's statements are supported by examination of his cross-examination of Stoneking about the government's payments for his cooperation. It is unlikely that further attempts to discredit Stoneking using his criminal record would have made a difference. Stoneking was one of some sixty government witnesses during a three week trial, and his fifteen minute testimony on direct examination was only one piece of evidence implicating Flynn in the

_____

[3]He had represented Stoneking when he was arrested for murder in the late 1970's; Stoneking was never charged and was released after five hours. He had also represented Stoneking on a double murder charge, which resulted in a manslaughter conviction, and on Dyer Act violations, for which Stoneking was convicted in the early 1980's. In 1983 or 1984, the attorney learned that Stoneking had been secretly cooperating with the government, and he did not represent him after that. Flynn testified at his § 2255 hearing that prior to his trial he knew that his counsel had previously represented Stoneking and that Stoneking was a potential witness against him.

[4]The parties stipulated to the use of the affidavit filed by Flynn's trial counsel, who was deceased at the time of the § 2255 hearing.

racketeering enterprise. See Flynn, 852 F.2d at 1052. The substance of his testimony was that Flynn had attended a meeting at which Stoneking and Paul Spica were installed in different unions, and that Flynn "wasn't happy with Paul Spica coming on." Since Stoneking could have implicated Flynn in other illegal activities, counsel's choice not to expand Stoneking's testimony by delving into his past was "within the range of constitutionally acceptable lawyering." See Simmons, 915 F.2d at 379 ("[t]he best cross-examiner is one who knows when to stop").

The district court did not err in denying relief on the ineffective assistance claim based on conflict of interest. Flynn has failed to demonstrate an actual conflict of interest sufficient to raise a presumption of prejudice. Strickland, 466 U.S. at 692. Since he did not make a sufficient showing of conflict of interest, his complaint that the trial court should have made further inquiry into the alleged conflict also fails. The court asked counsel about his prior representation of Stoneking, he responded that the situation had been neutralized, and the court was under no duty to hold a further hearing on the issue. See Agosto, 675 F.2d at 970 n.3.

Flynn also alleges that he was denied effective assistance of trial counsel by the failure adequately to investigate and use available exculpatory evidence. He complains that counsel did not file any pre-trial discovery motions and did not obtain documents or call witnesses concerning police reports allegedly identifying other individuals with a motive to kill Spica, an officer's observation of a truck driver near Spica's bombed car, implications of others in the Spica and Faheen bombings, and a police report indicating that Flynn had not possessed the explosives allegedly used to kill Faheen.

The absence of pre-trial discovery motions does not mean that Flynn's trial lawyer did not investigate the information in

9

question or receive the documents from the government. Flynn testified at the hearing on his § 2255 motion that his counsel contacted several witnesses and used them at trial to support his alibi defense. Flynn's attorney also testified by affidavit that he "fully and completely investigated all pertinent and relevant matter[s] to both the government's and defendant's case, by either interviewing witnesses, obtaining reports, questioning Mr. Flynn, or other means of investigation. . . ." He further stated that "[h]e thoroughly contemplated the use of all witnesses . . . and that any decision to call or not call any particular witness was based on a comprehensive evaluation as to their effectiveness in relation to Mr. Flynn's defense."

Flynn's experienced attorney had received discovery on the same racketeering events some two years earlier while representing a fellow enterprise member, Charles M. Loewe, in a 34 day jury trial. See United States v. Leisure, 844 F.2d 1347 (8th Cir.), cert. denied, 488 U.S. 932 (1988). In light of these circumstances and "applying a heavy measure of deference to counsel's judgments", it has not been shown that counsel's decisions about trial preparation were objectively unreasonable. Strickland, 466 U.S. at 691. Flynn has also not shown that use of the information he references would have changed the outcome of the trial, see id., or that it would have aided the alibi defense he relied on, or would have outweighed the other evidence connecting him to the Leisure group's activities. See Flynn, 852 F.2d at 1052. Since Flynn has not established either that his counsel's actions were professionally incompetent or prejudicial, his claim of ineffective assistance of counsel on this basis was properly denied. See Strickland, 466 U.S. at 691, 694.

Flynn next contends that his attorney's performance was adversely affected by his physical and emotional problems. His attorney was taking medication for high blood pressure and was reportedly experiencing mood swings during the trial. Flynn has

10

not specified in what way counsel's condition caused constitutionally deficient assistance at trial. In his affidavit, Flynn's attorney stated that the medication did not affect his ability to concentrate and that his medical condition was under control during the trial. The trial took place over a period of three weeks, during which time Flynn's attorney cross-examined numerous government witnesses and called several witnesses to substantiate Flynn's defense. Nothing in the record suggests that his professional judgment or strategy choices did not remain well within the range of reasonable decisions. See id. at 699. Flynn has therefore failed to establish ineffective assistance because of counsel's physical and mental condition.

Flynn bases his last claim of ineffective assistance on his appellate counsel's failure to ask the Court of Appeals to reverse Counts I and II of the indictment. Flynn argues that the evidence admitted on Count III, the count which was reversed and which charged transportation and receipt of dynamite in interstate commerce, prejudicially spilled over into the other counts. He contends that his counsel should have raised this issue on appeal when he presented an insufficiency of the evidence claim on Count III. Alternatively, Flynn argues that counsel should have raised the issue by way of a motion for rehearing, or a transfer to the court en banc, upon receiving the panel opinion.

The reason Flynn's conviction on Count III was reversed was because there was insufficient evidence the dynamite had been transported between states. See Flynn, 852 F.2d at 1056. Proof of interstate transportation was not required to convict Flynn of the RICO or conspiracy charges. Appellate counsel had challenged the sufficiency of the evidence on both Counts I and II, but the court affirmed the convictions on both counts. See id. at 1052 ("Flynn's participation in the enterprise amounted to more than the mere predicate acts with which he was charged; he actively participated in the Leisure enterprise."). Mere speculation that the evidence

11

on Count III prejudicially spilled over into Counts I and II does not establish professionally incompetent assistance. Counsel's performance has therefore not been shown to be deficient in respect to the handling of the issues relating to Counts I and II or in deciding not to seek rehearing. See Strickland, 466 U.S. at 690, 694.

## III.

Finally, Flynn argues that the government failed to disclose exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). This evidence consists of the police reports and other information underlying Flynn's previously discussed claim of inadequate investigation by his trial counsel.

Flynn's trial counsel testified that "the Government fully complied with Brady v. Maryland, by disclosing to [him] all favorable evidence to Mr. Flynn regarding the John Paul Spica killing and the George 'Sonny' Faheen killing, and that [he] fully and totally examined this discovery material and all other discovery material made available to [him]." The only evidence that exculpatory material was withheld is Flynn's assertion that he first saw the documents after his trial when they were obtained by a different attorney for a state court case. The possibility that counsel did not show Flynn these documents does not mean that the government did not comply with its Brady obligations, however. Our review of the documents also does not show that the evidence was material either to Flynn's guilt or punishment. See id. at 87. The district court therefore did not err in determining that no Brady violation had occurred.[5]

---

[5]We note that Flynn did not raise this issue on appeal. In view of our conclusion that no Brady violation occurred, we need not address whether Flynn failed to preserve this issue.

12

For these reasons, the judgment of the district court is affirmed.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.