**UNITED STATES of America**

v.

**Ronnie Joe BENSON**

No. 4:00–CV–00333–WRW.
No. 4:96–CR–00233(27).

United States District Court,
E.D. Arkansas,
Western Division.

Jan. 5, 2001.

Dan Stripling, U.S. Attorney's Office, Little Rock, AR, for U.S.

Danny Ray Williams, Little Rock, AR, for·Ronnie Joe Benson.

1. This opinion will only address the conflict of interest issue, and the *Apprendi* issue raised by the petitioner will be resolved in a later opinion.

2. Petitioner was also given five years supervised release and a $200 Special Assessment.

## ORDER

WILSON, District Judge.

Pending is the petitioner's request (Doc. # 1) to vacate, correct, or set aside his sentence under 28 U.S.C. § 2255. The Government has responded (Doc.# 2).[1]

. Petitioner, Ronnie Joe Benson, was indicted by a Grand Jury for the Eastern District of Arkansas on November 12, 1996. On December 13, 1996, a Superseding Indictment was returned by the Grand Jury and the case went to trial on July 15, 1997. On July 18, 1997, the jury returned a verdict of guilty against the petitioner on both counts under which he was charged: Count I—conspiracy to distribute and possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846, and Count XI—possession with intent to distribute approximately three ounces of cocaine on December 12, 1995, in violation of 21 U.S.C. § 841.

On October 14, 1997, I sentenced the petitioner to a term of imprisonment of 360 months on Count I and 51 months on Count XI, to run concurrently.[2] Petitioner unsuccessfully appealed his conviction to the Eighth Circuit in *U.S. v. Sanders,* 168. F.3d 496 (8th Cir.1998) (holding in part that the record contained substantial evidence upon which the jury reasonably could have found Benson guilty of the drug charges).[3]

Petitioner has now filed a motion to set aside his conviction under 28 U.S.C. § 2255 arguing that his trial counsel, Robert Booker ("trial counsel" or "Booker"), had a conflict of interest that was known to this Court, and that, because I failed to comply with Rule 44(c) of the Federal Rules of Criminal Procedure, petitioner's trial counsel provided him with ineffective

3. Certiorari was denied by the Supreme Court on May 24, 1999. *See, Benson v. U.S.* 526 U.S. 1139, 119 S.Ct. 1797, 143 L.Ed.2d 1024 (1999)

assistance of counsel in violation of the Sixth Amendment.

The alleged conflict of interest involved Booker's representation of both the petitioner and one of the petitioner's friends. Darrell Fluker ("Fluker"). Fluker was charged with a variety of drug related offenses including one incident that took place while the petitioner was in a car with Fluker—but he was not named in the petitioner's conspiracy indictment.

In January 1997, Fluker hired Booker, who had, at that time, been representing the petitioner for about two months. When the Government learned that Booker represented both men, it requested a Rule 44(c) hearing in Fluker's case. During that hearing in front of the Honorable James M. Moody, the Assistant United States Attorney ("AUSA") advised Judge Moody that Booker represented the petitioner in "a separate case that evolved from the same investigation." *See* Transcript of February 18, 1996, Rule 44(c) Hearing, pg.3. Fluker waived whatever potential conflict existed; that waiver was reduced to writing.

On March 20, 1997, the Government filed another Rule 44(c) motion, this time in the petitioner's case. After the motion was filed. Booker sent a letter to me, stating his belief that there was no conflict since he represented the petitioner's friend in a completely separate case. The letter stated:

> .... First of all. I would request that Judge Wilson give very careful consideration as to whether of [sic] not 'friendship' with someone in a wholly separate case, which is being handled by a different Judge and has been assigned a different case number, is the type of 'conflict' contemplated by Rule 44(c). My impression is that a Rule 44(c) hearing

is not warranted by the circumstances of the present case.... [4]

For some reason, which now escapes me, I didn't conducted a Rule 44(c) hearing in the petitioner's case, and the Government's motion was never ruled upon. Petitioner argues that my failure to conduct the Rule 44(c) hearing resulted in a violation of his Sixth Amendment right to be represented by conflict free counsel. He argues that the relief he seeks is automatic under the facts of this case.

## ANALYSIS

Rule 44(c) of the Federal Rules of Criminal Procedure states:

> Joint representation. Whenever two or more defendants have been *jointly charged* pursuant to Rule 8(b) or have been *joined for trial* pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel. (emphasis added)

Taken literally, this rule was not applicable to petitioner's case because the petitioner and Fluker were never jointly charged under Federal Rule of Criminal Procedure 8(b), nor were they joined for trial under Federal Rule of Criminal Procedure 13. More importantly, Fluker and the petitioner were in separate cases, before separate judges, and charged with unrelated offenses.[5] It appears that their only *proven*

---

**4.** Booker's letter to the Court dated March 28, 1997.

**5.** Mr. Fluker was charged with distribution of cocaine base October 10, November 1, and November 9, 1995, and possession with the intent to distribute cocaine base on April 10, 1996. Petitioner was charged in a conspiracy and with a substantive drug offense on December 12, 1995.

associations, relevant to this motion is that they were friends and that the petitioner was in a car with Fluker on April 10, 1996, when Fluker threw drugs from this vehicle. Fluker was charged with possession with the intent to distribute for that act, but the charges against the petitioner relating to that incident were dropped.

Even though I .was not technically required by Rule 44(c) to hold a hearing, case law suggests that, because I was put on notice of a potential conflict, I should have held a hearing and given the petitioner an opportunity to formally waive any potential conflicts.[6] However, the fact that I did not conduct a hearing does not automatically entitle the petitioner to a new trial. In *Cox v. Norris*, 958 F.Supp. 411. (E.D.Ark.1996), the Honorable G. Thomas Eisele denied the habeas corpus petition of a defendant who alleged that his trial counsel acted under a conflict of interest while simultaneously representing the defendant and one of the prosecution's witnesses. After finding no actual conflict. Judge Eisele noted that:

> ... the Supreme Court has commented (but has not held) that [*Cuyler v.*] *Sullivan* mandates a reversal when the trial court has failed to make an inquiry even though it 'knows or reasonably should know that a particular conflict exists.'[7]

The opinion went on to explain, that unless there is an actual conflict, the trial judge's failure to investigate potential conflicts does not require reversal in every instance:

> This Court agrees with and, therefore, adopts the interpretation of *Wood* [*v. Georgia* ] offered by the U.S. Court of

Appeals for the First Circuit. In *O'Brien v. United States*, the First Circuit rejected a reading of *Wood* that would require reversal in every instance that a potential conflict appeared and went uninvestigated by the trial court. As the *O'Brien* court noted, '[t]he court in *Wood* did not require an automatic reversal of the conviction, *but merely remanded the case to enable the trial court to conduct the necessary inquiry, the implication being that the convictions would only be overturned if an actual conflict were found.'* The mere possibility of conflict is insufficient to impugn a criminal conviction. '[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.'[8]

## WAS THERE AN ACTUAL CONFLICT?

■ Generally speaking, to uphold a claim of ineffective assistance of counsel, a court must find that the counsel's performance was seriously deficient, and that the ineffective performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A claim for ineffective assistance of counsel arising from a conflict of interest, however, does not require proof of the prejudice component of the *Strickland* test; rather, the petitioner can establish a Sixth Amendment violation if he can demonstrate that "an actual conflict of interest adversely affected his attorney's performance. *See, Cuyler v. Sullivan*, 446 U.S.

---

**6.** I am satisfied that Mr. Benson would have waived all potential conflicts had a hearing been held, and I'm still inclined to think he waived all conflicts even though the hearing was never held. Before his trial he knew that Fluker had had a Rule 44(c) hearing; he had discussed potential conflicts of interest with his attorney and Fluker before testifying at the Dunbar trial; he was given a copy of Mr. Booker's letter of March 28, 1997, which flatly denied the existence of any conflict, and Mr. Booker testified that he specifically discussed that letter with the petitioner on several occasions prior to trial. Petitioner was advised in the premises, but did not express any concern about conflicts until he filed his § 2255 motion.

**7.** *Cox* at 416 (citing *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981)

**8.** *Id.* at 417 (emphasis added)(internal citations omitted)

335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). But, if the petitioner cannot show the existence of an actual conflict of interest, then the *Cuyler* decision is inapplicable, and the petitioner can only prove ineffective assistance of counsel by meeting the requirements of the *Strickland* test. *See, Johnson v. Norris,* 207 F.3d 515.

■ Petitioner has alleged that Booker provided ineffective assistance of counsel because of an actual conflict of interest that arose from the representation of the petitioner and Fluker at the same time. In support of his argument that the conflict of interest was actual, as opposed to potential, petitioner points to several pieces of information known to his trial counsel before the petitioner's trial. For example, his trial counsel knew:

1) that the Government possessed a taped conversation between Fluker and the petitioner, and that the Government was potentially going to offer that tape at trial to establish an overt act by the petitioner during a drug conspiracy;[9]

2) that the Government had offered Fluker a plea agreement in exchange for admissions about his criminal activities that would have made him eligible for the safety-valve sentencing provision;[10] and

3) that Fluker had been accused of being a runner/mule for the petitioner, and that he might be implicated in the conspiracy if he testified at petitioner's trial.[11]

Petitioner believes that based upon that knowledge, a potential conflict of interest became an actual one during the petitioner's trial when Fluker was not called as a defense witness, i.e., when faced with the competing interests of two clients, Booker chose to protect Fluker from implication in the conspiracy by not calling him to testify. Stated differently, petitioner believes that his trial counsel knew, or, at the very least thought, that Fluker's testimony would help the petitioner's case, but he decided to protect Fluker instead of defending the petitioner to the fullest extent possible. Booker testified there was no conflict of interest, and that he did not call Fluker because it would not have benefitted the petitioner's case.

Petitioner offers two arguments to rebut Booker's position that Fluker's testimony would not have helped the petitioner's defense.

1) He believes that Fluker's testimony would have discredited the reliability of some of the Government's evidence. Apparently the Government had a tape that it had misidentified as containing a conversation between the petitioner and Keith Dunbar. The recording was, in reality, a taped conversation between the petitioner and Fluker. Petitioner argues that, if the Government had introduced the misidentified tape as being a conversation between the petitioner and Dunbar, Fluker would have testified that it was not, and, in doing so, would have had called into question the reliability of all or some of the Government's evidence. He also argues that Fluker was the only "disinterested" person who could have clarified that the conversation on the misidentified tape was about money and not drugs.

This argument fails for two primary reasons. First, Fluker would not have been a disinterested witness. He would have been testifying in an attempt to keep his good friend out of prison, and would have had absolutely no choice but to testify that the conversation was about money and not about drugs for fear of being implicated

---

9. The Government listed that tape as potential evidence in its Bill of Particulars.

10. Mr. Booker testified that the only time the Government specifically asked Fluker to testify against other people was after the petitioner had already been convicted.

11. Mr. Booker admits telling Fluker to stay away from the petitioner's trial because of the potential ramifications to Fluker and his own trial.

and indicted in the conspiracy. Second, this entire argument is based purely on a hypothetical situation. The Government did not introduce the misidentified tape, so it will never be known what impact Fluker's testimony might have had.

2) Petitioner also believes that Fluker's testimony would have added support to his own testimony that he was not a drug dealer. But while Fluker's testimony may have helped (assuming the jury found him to be credible), Fluker's testimony would not have explained away the great weight of the evidence which included the testimony of Derrick Dunbar. Mr. Dunbar testified about his drug dealings with the petitioner, and that testimony was supported by the recorded conversations that the Government introduced into evidence. Fluker could not have explained why the petitioner said the things he said to Dunbar on those tapes because Fluker was not a party to those particular recorded conversations.

Petitioner's basic argument is that his trial counsel did not call Fluker as a witness because of an actual conflict of interest. However, as trial counsel, Booker was and is in the best position to determine when a conflict of interests exists,[12] and, in this context, "substantial weight" is given to his representations. *See United States v. Agosto*, 675 F.2d 965, 972 (8th Cir.1982). Booker testified on October 10, 2000, that he did not and still does not perceive an actual conflict of interest, and that he didn't call Fluker because:

[t]here was nothing helpful that would have come from Fluker regarding the issue of whether he was running or not. There was just nothing there.... Fluker had nothing helpful to offer at Ronnie

Benson's trial... Mr. Benson and I and Ms. Davis ... had a specific discussion that time at the Double Tree Hotel with respect to whether or not we could, first of all, call Fluker and have him indicate that that was his voice [on the misidentified tape], and second of all, trying to address anything about Michael Hatton, and *we all agreed that there was nothing good that would come out of trying to put Fluker on the stand. I don't think there was any of us in that room who thought that Fluker could offer something helpful.* (emphasis added)

It is my finding that Booker did not call Fluker because he knew that Fluker's testimony would not help, but hurt, the petitioner's defense and implicate Fluker as a co-conspirator all in one fatal swoop. For example, had Booker called Fluker to testify, the Government would have rebutted his testimony by introducing evidence relating to Michael Hatton's statement of February, 7, 1997. That statement suggested that Mr. Hatton had purchased drugs from both Fluker (25 to 50 times) and the petitioner (five to six times). That statement also suggested that Fluker worked for the petitioner as his mule/drug runner. Those allegations clearly indicate that Fluker and the petitioner had an agreement related to a continuing course of criminal conduct, i.e., a conspiracy.[13] Furthermore, had Fluker testified that it was he, and not Dunbar, on the misidentified tape which was discussed above, that too would have implicated Fluker as a co-conspirator, and given the Government proof that the petitioner was involved in a larger conspiracy than the one originally charged.[14]

---

**12.** *See, Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (An "attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.")

**13.** During the hearing of October 10, 2000, petitioner's current attorney, Danny Williams,

admitted that "[Fluker] had only possession with intent charges, but had he come to Mr. Benson's trial and testified or offered any kind of evidence that could have been used against him, he could have been brought into the conspiracy count."

**14.** In the letter brief filed on October 31, 2000, the petitioner admitted that "... because the government designated the conver-

Petitioner's final argument is that evidence of an actual conflict can be inferred from the events surrounding the Government's plea offer to Fluker before the petitioner's trial. It is true that if Fluker had accepted the plea and agreed to tell the Government about all of the events and activities surrounding his illegal activities, an actual conflict would have materialized. In this case, however, Fluker did not take the plea offer, did not agree to offer testimony detrimental to the petitioner, and all arguments about what would have happened from that point are merely hypothetical.

Based upon arguments of counsel and a *de novo* review of the record, considerable research, and reflection, I find that Booker represented the petitioner at trial without an actual conflict of interest. That finding, however, does not end the inquiry. All that has been decided thus far is that there was no actual conflict and that petitioner cannot reap the benefits of the *Cuyler, supra.*[15]

█ Because *Cuyler* is inapplicable, the petitioner can only establish that his trial counsel was ineffective by showing: (1) that despite the "strong presumption that counsel's conduct fails within the wide range of reasonable professional assistance," his trial counsel's performance was deficient; and (2) that his trial counsel's deficient performance prejudiced his defense. *Id.* at 687–89, 104 S.Ct. 2052. Prejudice to the petitioner's defense can be shown if there was "a reasonable probability that *but for* counsel's unprofessional errors, the result of the proceeding would have been different." *See Lockhart v. Fretwell*, 506 U.S. 364, 368–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). A review of the pre-trial motions and the trial transcript reveals that Booker was both an innovative and vigorous advocate for the petitioner—his performance simply was not deficient.

Even if Booker's performance was somehow deemed deficient, petitioner has not shown how his defense was prejudiced by Booker's decision not to call Fluker. Had Fluker testified, presumably he was going to state that petitioner was not a drug dealer. The Government, in response to that testimony, would have: (1) impeached Fluker's credibility by asking him questions about being a mule and a drug dealer for the petitioner; (2) offered evidence suggesting that Fluker was a co-conspirator who was testifying to keep a guilty co-conspirator/friend out of prison; and (3) offered evidence detrimental to the petitioner's defense that was not offered because Fluker did not testified. Moreover, Fluker's testimony would not have overcome all of the testimony and tape recorded conversations that were the foundation of the Government's case. I believe that Booker tried the case well, and that he acted well within the wide range of reasonable professional assistance.

## CONCLUSION

Petitioner's counsel did not act under an actual conflict of interest while representing the petitioner at trial. That said, petitioner was required to prove Booker's performance was both deficient and that it prejudiced his defense. He has proven neither. The motion to vacate, set aside, or correct sentence is DENIED on this ground.

I will issue my decision on the pending *Apprendi* issue forthwith.

---

sation [on the misidentified tape] as an overt act in furtherance of the conspiracy charged, Fluker's admission that he was the true second participant in the telephone conversation would have been tantamount to an admission that he was a co-conspirator that had been overlooked."

**15.** *See Johnson v. Norris*, 207 F.3d 515, 519 (8th Cir.2000) (holding that, to be within *Cuyler*, the petitioner must prove both that his attorney acted under an actual conflict of interest, as opposed to a potential one, and that the conflict of interest actually affected the adequacy of the representation)