**James P. BADGER, Appellant**

v.

**Roy L. HENDRICKS; The Attorney General of the State of New Jersey, Peter C. Harvey***

***(Pursuant to FRAP 43(c)).**

No. 05–4691.

United States Court of Appeals, Third Circuit.

Argued on Feb. 7, 2008.

Opinion filed April 18, 2008.

McKee, Circuit Judge, filed a dissenting opinion.

Mary Gibbons, Esq., Toms River, NJ, for Appellant.

Deborah Bartolomey, Esq., Deputy Attorney General, Office of Attorney General, Division of Criminal Justice, Trenton, NJ, for Appellees.

Before: MCKEE and AMBRO, Circuit Judges and TUCKER, District Judge.*

OPINION

TUCKER, District Judge.

James P. Badger appeals the Order of the U.S. District Court for the District of New Jersey, denying his petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254. In his habeas petition, Badger alleges, *inter alia*, that his appellate counsel's prior representation of a former co-defendant adversely affected counsel's performance and thereby deprived him of his right to effective assistance of counsel in violation of the Sixth Amendment of the U.S. Constitution. Upon review of the state court record, the District Court de-

---

* Honorable Petrese B. Tucker, United States District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

termined that Badger had failed to establish an actual conflict of interest and denied his habeas petition. We affirm.

## I. BACKGROUND

On May 30, 1991, the Cumberland County Prosecutor's Office indicted Badger for the murder, assault, and robbery of Benjamin Taybago. Also charged in the indictment were Frank Johnson (Badger's brother-in-law), Patricia Badger–Johnson (Badger's sister and Johnson's wife), and Anthony Burton. On August 29, 1991, Johnson pled guilty to aggravated manslaughter and robbery pursuant to a plea agreement. Johnson also gave a statement to the police, which exonerated Badger–Johnson and Burton. The charges against Badger–Johnson and Burton were subsequently dismissed on the government's motion.

At Badger's trial, which took place on July 14–17, 1992, Johnson testified as the only eyewitness to the crime. Johnson testified that he entered Taybago's home and distracted him, while Badger entered from the rear. He further testified that Badger attacked the victim, Taybago, before taking money, jewelry, and other items. Other witnesses presented corroborating circumstantial evidence. On July 17, 1992, Badger was convicted of murder, robbery, unlawful possession of a weapon, and felony murder, and was later sentenced to an aggregate term of fifty years with a forty-year parole bar.

After Badger was convicted, Johnson moved for reconsideration of his sentence. The government did not oppose the motion. Johnson, who was originally sentenced to an aggregate term of thirty years imprisonment with a ten-year parole bar for his involvement in the murder and robbery, was resentenced to an aggregate term of twenty years with a seven-year parole bar.

On December 4, 1992, Badger filed a Notice of Appeal with the New Jersey Superior Court, Appellate Division. His direct appeal was handled by Attorney Linda Lawhun, who had previously represented his sister, Badger–Johnson, in the Taybago murder and robbery case in which Badger was convicted. During the direct appeal proceedings, Lawhun moved the state appellate court for a temporary remand on the grounds that Badger had obtained newly discovered evidence which would serve as the basis for a motion for new trial. The new evidence was of an alleged secret pretrial agreement between the trial prosecutor and Johnson, which was previously undisclosed in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The alleged secret agreement was to be evidenced by (1) Johnson's untimely application for and receipt of a reconsideration and reduction of his sentence without objection by the state; (2) the dismissal of charges against all of the individuals who served as witnesses for the state; and (3) Johnson's desire to recant his testimony against Badger in that he had testified falsely to obtain his wife's, Badger–Johnson's, release from jail.

After dispensing with several of Badger's other claims on the merits, the state appellate court remanded the case for an evidentiary hearing on the motion for new trial based on the alleged *Brady* violation.[1] At the hearing, Johnson recanted his trial testimony and stated that he had falsely testified at trial in order to "get the time off [for] me and my wife." Johnson later

---

1. Notably, the court which presided over Badger's criminal trial did not preside over the evidentiary hearing.

entered a guilty plea to perjury charges arising out of his testimony at the evidentiary hearing.

The other witnesses at the evidentiary hearing on Badger's motion for new trial included Robert Luther, the First Assistant Prosecutor who handled the Taybago case; Harry Leszchyn, Jr., Johnson's counsel; and the Honorable Rushton Ridgway, the judge who presided over Johnson's resentencing. Judge Ridgway testified that there were no irregularities in Johnson's resentencing and Leszchyn denied any knowledge of or participation in any secret agreement. The prosecutor, Luther, denied the existence of any secret agreement between his office and Johnson for Johnson's reduced sentence and Badger–Johnson's release from jail. Moreover, Luther maintained that Johnson had no idea that the charges would be dismissed against his wife before he gave the statement implicating Badger. Lawhun cross-examined all of the government's witnesses but did not call to the stand her former client, Badger–Johnson, or any of the witnesses who she claimed received benefits from the government in exchange for their testimony at trial. Lawhun did not advise the court that she had previously represented Badger–Johnson nor was any objection to her representation voiced by Badger. The state court determined that no *Brady* violation had occurred and denied Badger's motion for new trial.

On November 30, 1994, shortly after the court denied the motion for new trial, Lawhun wrote to Badger regarding the prosecutor's testimony at the hearing, stating: "In light of Mr. Luther's testimony concerning Pat's release from jail, you may prefer to have me as a potential witness rather than an attorney. I was as surprised by Mr. Luther's denial of an agreement about Pat as you were." Lawhun further stated, "You could have the Public Defender's Office handle the appeal" and requested that Badger inform her of how he wished to proceed. There is no evidence of a response from Badger; however, Lawhun subsequently prepared appellate documents on Badger's behalf.

Lawhun both filed an appeal of the court's denial of Badger's motion for new trial, which the state appellate court affirmed, and prepared the initial post conviction pleadings. Lawhun later terminated her representation of Badger when she became a prosecutor in the Cumberland County Prosecutor's Office, the same office that was still handling Badger's case. Badger retained new counsel, Stephen B. Patrick, who filed the brief and appendix to Badger's motion for post-conviction relief, which was ultimately denied. Badger later obtained other counsel.

Prior to filing Badger's appeal of the denial of post-conviction relief, Badger's new counsel, Charles P. Savoth III, contacted Lawhun regarding an alleged conflict of interest arising from her successive representation of Badger–Johnson and Badger. Savoth asked Lawhun to review her files to refresh her recollection as to the basis for her suggestion that she might better serve as a witness for Badger. Lawhun did not produce her file, nor did she provide information to Savoth as to why she made the statements in her letter, expressing difficulty in recalling the reasons why she had made those statements and authored a letter to that effect.

On appeal of the lower court's denial of post-conviction relief, Badger claimed that Lawhun had a conflict of interest which adversely affected her performance both at the evidentiary hearing on Badger's motion for new trial and on direct appeal. The state appellate court noted Badger's failure to develop the record, stating that because he raised the conflict of interest issue for the first time on appeal of denial

of post-conviction relief, "there was no record for appellate review." Further, the appellate court determined that Badger's allegations of a conflict of interest did not warrant an evidentiary hearing. The appellate court denied Badger's conflict of interest claim as "unsupported" and "without merit."

Thereafter, Badger filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 in the U.S. District Court for the District of New Jersey. Badger raised, *inter alia*, the claim that he was denied effective assistance of counsel due to Lawhun's alleged conflict of interest. Upon review of the state court record, the District Court rejected the claim because Badger "ha[d] not shown that counsel had an actual conflict of interest which adversely affected counsel's performance." Badger appeals.

## II. STANDARD OF REVIEW

Where, as here, the district court bases its decision on the record of the state court proceedings, rather than on facts found after an evidentiary hearing, the court of appeals has plenary review of the district court's decision. *Marshall v. Hendricks*, 307 F.3d 36, 50 (3d Cir.2002), *cert. denied*, 538 U.S. 911, 123 S.Ct. 1492, 155 L.Ed.2d 234 (2003). Reviewing federal courts examine state habeas petitions under the terms of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996). Under the AEDPA, a federal court may not grant habeas relief under § 2254 unless the state court's adjudication of the petitioner's claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" as determined by Supreme Court precedent, or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

## III. DISCUSSION

Per Supreme Court precedent, multiple representation of co-defendants does not violate the Sixth Amendment's right to effective assistance of counsel unless it gives rise to a conflict of interest which adversely affected counsel's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). To prevail, the defendant must establish an *actual* conflict of interest that limited or otherwise prevented counsel's effective representation; the mere "possibility of conflict is insufficient to impugn a criminal conviction." *Id.* at 350, 100 S.Ct. 1708. Here, Badger claims that Lawhun's prior representation of his sister, Badger–Johnson, limited her ability to serve as effective appellate counsel as evidenced by Lawhun's November 30, 1994 letter. The state appellate court found that Badger had failed to establish an actual conflict which adversely affected Lawhun's performance. Badger argues that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law and was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### A. § 2254(d)(1)—"contrary to" or "unreasonable application" of federal law

■ The state appellate court's decision that Badger failed to establish a conflict of interest claim was neither contrary to nor an unreasonable application of federal law. Badger correctly argues that "[t]he existence of an actual conflict, together with an adverse affect on representation, is the measure of a Sixth Amendment violation." Appellant's Brief at 27. However, Badger

has neither established an *actual* conflict of interest nor an adverse effect on Lawhun's performance caused by her prior representation of Badger–Johnson. Badger merely states that Lawhun's November 30, 1994 letter demonstrates that Lawhun *may* have possessed additional information regarding Badger–Johnson's release from jail which *may* have been helpful to Badger at the evidentiary hearing on his motion for new trial. *See id.* at 28–30. In other words, Badger merely alleges the possibility of a conflict which may have adversely affected counsel's performance. *See Cuyler*, 446 U.S. at 350, 100 S.Ct. 1708 (stating that a possible conflict of interest is insufficient to establish a deprivation of effective assistance of counsel).

Badger does not state what information, if any, Lawhun possessed relevant to his *Brady* claim and withheld due to her prior representation of his sister, Badger–Johnson. The evidence of record indicates that Lawhun believed that Johnson's testimony would be sufficient to establish a *Brady* violation. Further, Badger's claim that Lawhun somehow withheld relevant information is belied by the state court's finding that the government did not have a secret agreement with Johnson to release Badger–Johnson from jail in exchange for Johnson's favorable testimony, and even further contradicted by Johnson's guilty plea to perjury charges due to his false testimony at the evidentiary hearing. *See* 28 U.S.C. § 2254(e)(1) (calling for deference to state court's factual findings in absence of clear and convincing evidence to the contrary). Because Badger has failed to show an actual conflict of interest, the state court's decision cannot be deemed "contrary to" or an "unreasonable application" of federal law. *See Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir.2000) (stating that a state court adjudication is "contrary to" federal law if Supreme Court precedent requires a contrary outcome); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 890 (3d Cir.1999) (en banc) (stating that a state court adjudication is an "unreasonable application" of federal law if it "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent" when "evaluated objectively and on the merits").

**B. § 2254(d)(2)—unreasonable determination of the facts in light of the evidence**

Badger's habeas petition also challenges the reasonableness of the state appellate court's determination of the factual predicate of his conflict of interest claim. The state appellate court concluded that Badger's conflict of interest claim was "unsupported." Badger claims that the court's "summary rejection" of his claim as "unsupported" was an unreasonable determination in light of the evidence before it, specifically Lawhun's November 30, 1994 letter.

■ The state court's decision was not based on an unreasonable determination of the facts in light of the evidence before it. Where, as here, the state court does not hold an evidentiary hearing, the federal court must look to the same evidence that the state court considered to determine if the state court's decision was in fact unreasonable in light of the evidence presented to it.[2] *Lambert v. Blackwell,*

---

**2.** The District Court was under no duty to provide Badger with an evidentiary hearing on his habeas petition. Where a habeas petitioner has failed to develop the state court record, the AEDPA permits a district court to conduct an evidentiary hearing in limited circumstances:

 . . .

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evi-

387 F.3d 210, 239 (3d Cir.2004). In his post-conviction relief appeal documents, Badger alleged that "his attorney on direct appeal had a conflict of interest arising out of her alleged representation of one of the codefendants [Badger–Johnson] whose charges had been dismissed before defendant's trial, and that this alleged conflict somehow prevented that attorney from calling the codefendant as a witness at [Badger's] remand hearing." *State v. Badger,* No. A–6030–97T4, Memorandum Op. (Sup.Ct. N.J., App. Div. June 12, 2000) (per curiam). The only evidence set forth by Badger in support of his allegations was Lawhun's letter, which states appellate counsel's surprise that the prosecutor had denied the existence of an agreement with Johnson regarding his wife, Badger–Johnson, and that going forward Badger may "prefer to have [Lawhun] as a potential witness rather than an attorney." Lawhun's statement is ambiguous and does not establish an actual conflict of interest stemming from Lawhun's prior representation of Badger–Johnson. The letter does not indicate that Lawhun's decision, assuming a decision was made, not to call Badger–Johnson was motivated by an interest to protect her former client. Instead, the record reveals that Lawhun believed that Johnson's testimony at the evidentiary hearing, recanting his trial testimony, would be sufficient to establish a *Brady* violation. This was perhaps an error in strategy as the presiding court did not find Johnson's testimony to be credible

and Johnson later pled guilty to charges of perjury in connection with his testimony at the hearing, but it does not establish an actual conflict of interest. Thus, the state court's determination that Badger's conflict of interest claim was "unsupported" was not an unreasonable determination in light of the evidence before it.

We affirm the District Court's decision, denying Badger's habeas corpus petition.

McKEE, Circuit Judge, Dissenting.

I find the circumstances of this case far too troubling to agree with my colleagues' conclusion. Accordingly, I can not agree that we must dismiss Badger's accusation of a prejudicial conflict of interest without a hearing. Moreover, for reasons that I shall explain, the exceedingly curious and peculiar coincidences here raise doubts in my mind about the conduct of the Cumberland County Prosecutor's Office that can best be resolved by affording Badger a hearing on his habeas petition. It may be that neither the *Brady* violation nor the conflicted representation he complains of ever happened. However, absent a hearing, we will never know, and his troubling allegations will continue to cloud this prosecution.

## I.

Our decision today upholds a murder conviction that rests almost exclusively on the trial testimony of Frank Johnson. The judge who presided over Badger's *Brady*

---

dentiary hearing on the claim unless the applicant shows that—
(A) the claim relies on—
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
28 U.S.C. § 2254(e)(2). Badger does not meet any of the requirements for an evidentiary hearing.

hearing felt compelled to describe Johnson as "one of the most consummate liars ... seen in 21 years on the bench."[3] As the majority notes, Johnson subsequently pled guilty to perjury based on his testimony at that hearing. Although the prosecution has argued that Badger's murder conviction does not rest solely on Johnson's testimony because that testimony is corroborated, the state conceded at oral argument that the other evidence that Badger actually committed the murder was circumstantial. That evidence tied Badger to the robbery and certainly supported a conviction for possession of stolen property, but the only evidence that Badger murdered the victim came from Johnson.[4]

In his petitions for state and federal collateral relief, Badger presented what I believe is fairly compelling circumstantial evidence that his appellate attorney, Linda Lawhun, labored under a conflict of interest which actually affected her performance at Badger's *Brady* hearing. At the very least, Badger has shown that further inquiry through an evidentiary hearing is warranted.

Lawhun's letter to Badger after the *Brady* hearing clearly suggests that she possessed some information about Frank Johnson's plea agreement. Her letter can not be explained any other way. She wrote: "In light of [the prosecutor]'s testimony concerning Pat's release from jail, you may prefer to have me as a potential witness rather than an attorney. I was as surprised by [the prosecutor]'s denial of an agreement about Pat as you were." App. 81. Although Lawhun apparently now claims "difficulty in recalling the reasons why she had made those statements," App. 65 (Certification of Charles P. Savoth, III, Esq.), I can think of only one plausible explanation. She expressed surprise because she was surprised. It simply strains credulity to conclude that her letter fails to establish that she had evidence relevant to her *Brady* hearing that was not elicited because of her prior representation of Patricia. Any conclusion to the contrary is "an unreasonable determination of the facts...." 28 U.S.C. § 2254(d)(2).

Despite the extremely troubling nature of that letter to Badger, Lawhun has never been called on to testify before any court regarding the meaning of the letter or her ability to represent Badger despite her prior representation of Patricia. One of Badger's attorneys submitted a certification relating his communications with Lawhun and unsuccessful attempts to obtain

3. As explained by the Appellate Division in Badger's direct appeal:

[P]rior to his inculpatory testimony at defendant's trial, Johnson had already changed his story twice. Insofar as we are able to determine from this record, Johnson, who was indicted with [Badger] on charges of purposeful or knowing murder, felony murder, robbery, and possession of a weapon for an unlawful purpose, had made no statements to law enforcement officers respecting the crime until about a year after his pre-trial incarceration. At that time he requested an interview with law enforcement authorities and gave a statement in which he claimed that he alone had committed the crime and that neither [Badger] nor his, Johnson's, wife, who was then also incarcerated, had had anything to do with it. Several months later and shortly after new counsel had been appointed for him, he gave another statement inculpating [Badger] and generally consistent with the testimony he subsequently gave at [Badger]'s trial.
App. at 94–95.

4. The other evidence of Badger's guilt consisted primarily of statements from various acquaintances suggesting that Badger was seen after the robbery with unusually large quantities of cash and personal items matching the description of items stolen from the victim. It would have been exceedingly difficult to support a murder conviction on that evidence, especially since the witnesses were testifying five years after the events in question.

pertinent files from her in his post-conviction relief claim. Maj. Op., *supra*, at 181. Based on counsel's representation, it appears that Lawhun now works for the Cumberland County Prosecutor's Office, *id.;* the same office that Badger alleges committed the *Brady* violation in prosecuting him.

As my colleagues explain, Lawhun had represented Patricia Badger–Johnson when she was arrested and held on charges for the same crime Badger was later convicted of. The only witness Lawhun called at Badger's *Brady* hearing was Frank Johnson. As I have just explained, Frank Johnson's testimony was not only crucial to Badger's murder conviction, it is the only evidence that supports Badger's conviction for murder. It appears on this record that Lawhun called Johnson at Badger's post-conviction *Brady* hearing based on Lawhun's belief that "the recantation of Frank Johnson[ ] was sufficient to establish [the need for] a new trial." App. 70 (Certification of James P. Badger). For reasons that we will never know absent a hearing on Badger's *Strickland* claim, Lawhun did not call Patricia Badger–Johnson (or anyone else) to corroborate Frank Johnson's testimony regarding Patricia's release from prison. We should be concerned that Lawhun may not have called Patricia Badger–Johnson because Lawhun felt an obligation to protect the confidences of her former client. Since, as her letter states, Lawhun expected different testimony from the prosecutor, it certainly appears that she had knowledge of facts surrounding Johnson's communications with the government that sufficiently diverged from the prosecutor's testimony to "surprise" her and cause her to suggest that she could have better served Badger as a witness. I have a great deal of trouble understanding why that is not an actual conflict of interest.

Whatever the reason for not calling Patricia to testify at the *Brady* hearing, Lawhun's cross-examination of the prosecutor who testified at the *Brady* hearing is nothing short of woeful, and should only heighten our concern. Lawhun asked exactly five questions, and they served no apparent purpose whatsoever other than to reinforce the answers the prosecutor had given on direct examination—that there were no undisclosed deals with Frank Johnson:

Q. Did I understand you correctly that you never told Frank Johnson in August of 1991 that his wife would be released from jail?

A. That's correct.

Q. That was not one of the considerations that you discussed with Mr. Johnson?

A. That is correct.

Q. Did you have it in your mind that if he cooperated, his wife would be released from jail?

A. I did consider it, especially if he passed the polygraph, certainly; because ultimately, what I did, I dismissed the indictment against Patricia Badger–Johnson and Anthony Burton. They were both released from jail and all charges were dismissed against those two.

Q. And that was as a result of Mr. Johnson's cooperation is that correct?

A. That was part of it. Certainly, the proofs against those two defendants, in my mind, I did not believe were sufficient to obtain a conviction. So what I did, I went in front of the assignment judge ... [and] petitioned for a *non-pros* and ultimately it was granted as to Ms. Johnson and Mr. Burton.

Q. But Mr. Johnson had no idea that you were going to do that before he gave you the statement; is that what you're telling me?

A. That's correct.

Q. I have nothing else, Your Honor.

App. 88–89. Absent their leading nature, those questions would have been far more appropriate for a direct examination than the cross-examination of the main witness against her client's *Brady* claim. Not only did the "cross-examination" merely allow the witness to repeat his testimony, inexplicably, Lawhun did not ask a single question regarding Johnson's successful post-trial motion for resentencing as I explain below. *See infra* at 188.

One of the dangers of successive representations such as we have here is that the prior attorney who has had privileged communications "may fail to conduct a rigorous cross-examination for fear of misusing confidential information." *United States v. Agosto,* 675 F.2d 965, 971 (8th Cir.1982). The Supreme Court has held that an actual conflict exists where, because of a prior representation, "defense counsel failed to cross-examine a prosecution witness ... and failed to resist the presentation of arguably inadmissible evidence." *Cuyler v. Sullivan,* 446 U.S. 335, 349, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (discussing *Glasser v. United States,* 315 U.S. 60, 72–75, 62 S.Ct. 457, 86 L.Ed. 680 (1942)). I think it obvious that an actual conflict also would exist if Badger can establish that Lawhun's cross-examination of the prosecutor at the *Brady* hearing was compromised by her prior representation of Patricia and/or that she possessed relevant information but failed to inform the court of the reason for her "surprise" at the prosecutor's denial of undisclosed plea arrangements. A contrary ruling is an unreasonable application of the rule established in *Cuyler.* Accordingly, Badger has made the necessary showing to

obtain relief on his Sixth Amendment claim even under the restricted standard of review of AEDPA.

## II.

I realize, of course, that Badger's *Brady* claim is not directly before us. Nevertheless, given these very unique circumstances, I can not ignore the disturbing suggestion of undisclosed plea agreement(s) that may have hampered Badger's ability to present a defense. Any such agreement would clearly establish a *Brady* claim, and it would also be relevant to Badger's claim of ineffective assistance of counsel based upon the purported conflict of interest during the *Brady* hearing.

I readily admit that the evidence of such an agreement is circumstantial. However, it is less tentative than the evidence that Badger is guilty of murder. Evidence that Badger is guilty of murder rests solely on the uncorroborated testimony of Frank Johnson, "one of the most consummate liars ... seen in 21 years on the bench." Evidence that the prosecution had an undisclosed agreement with Johnson rests on the inference that should arise from Lawhun's unexplained expression of "surprise" at the prosecutor's denial of such an agreement as well as the state's handling of Johnson after he testified against Badger.

On December 3, 1992, Johnson's motion for reconsideration of sentence was heard on its merits by the trial judge. The motion was obviously grossly out of time, [N.J. Ct.] R. 3.21–10(a) requiring it to be made within sixty days after judgment of conviction and to be disposed of within seventy-five days thereafter.[5] Nevertheless the prosecutor expressly

---

**5.** In fact, the motion appears to have been nearly a year out of time—having been due

under the rule by December 22, 1991.

did not object to the untimeliness. Defense counsel denied that there had been an express prior promise to Johnson that the prosecutor would "help with respect to a reconsideration of sentence."

*State of New Jersey v. Badger*, A–1572–92T1, mem. op. at *6–7 (N.J. Sup.Ct.App. Div. June 29, 1994). The Appellate Division noted that although Johnson's late resentencing was not conclusive on Badger's claim, "[t]he circumstances . . . make[ ] us skeptical of the proposition that at the time Johnson testified [at Badger's trial], the prospect of the resentencing relief was not in some way communicated to him, and if it was, that communication, in whatever form it might have taken, would have been exculpatory evidence defendant would have been entitled to have." [6] *Id.,* at *12.

I share that skepticism. Moreover, given the circumstances that may have surrounded the *Brady* hearing, I can not readily conclude that Badger has had the contested *adversarial* evidentiary hearing that should have occurred on remand from the New Jersey Appellate Division.

I also think it curious that Johnson's defense attorney testified at the *Brady* hearing that he had not been present on August 14, 1991 when his client was interviewed by the prosecutor until after an agreement had been reached.[7] This can be most generously described as a questionable practice since Johnson had already been in custody for some time and had an attorney of record whom Johnson had a right to have present from the inception of any such interview. At the very least, one would think the prosecution would want Johnson's attorney to be present when a agreement was negotiated to avoid later allegations of some secret side deal, such as those before us now.

The coincidences don't end there. Patricia Badger–Johnson was arrested and incarcerated on "unrelated charges" the week before Badger's trial, and released on bail the day after the jury returned a guilty verdict based on Johnson's testimo-

**6.** The court also "[found] it extraordinary that under all the circumstances here, including the circumstance of Johnson's admitted involvement in this nefarious crime, a reduced parole ineligibility period of only seven years was unobjected to by the prosecutor and imposed by the court." *Id.* At oral argument, counsel for the New Jersey Attorney General represented that the reason the prosecutor's office did not oppose Johnson's late resentencing motion (reducing sentence from thirty to twenty years, *see* Maj. Op., *supra*, at ——, which I further discuss below) was that there was only one prison in the State of New Jersey that would house inmates sentenced to more than twenty years. Counsel claimed that because Johnson was scared of Badger, the State was trying to have Johnson moved out of the same prison with Badger, and the only way to do that was to reduce Johnson's sentence to less than twenty years. We expressed some surprise and requested explanation by way of a letter submitted pursuant to

FRAP 28(j). In the subsequent 28(j) letter, counsel admitted that there are, in fact, two—not one—maximum security prisons housing inmates with sentences of twenty years or more. No explanation was offered for the discrepancy with counsel's position at argument, and there remains no plausible explanation for the State's acquiescence in Johnson's out-of-time motion for a reduced sentence or for the generous reduction that he received.

**7.** The transcript of this portion of the hearing was not included in the record on appeal. The assertion appears in Badger's Statement of Facts and his habeas petition asserts that "[Johnson's attorney] testified at the remand hearing[ ] that Frank Johnson was already at the Office of the Prosecutor when he, [defense counsel], arrived." App. 35. However, the State did not contest, in its brief or at argument, the assertion that Johnson's attorney so testified.

ny.[8] These charges against Patricia were later dismissed. Badger's counsel suggested at argument before us that this second arrest of Patricia Badger–Johnson was an insurance policy to assure that Frank Johnson testified consistently with his plea agreement. While I do not necessarily accept that argument, it would be easier to dismiss the allegation as mere conspiracy theory if this record were not replete with coincidences and unanswered questions. We may never have the level of assurance that we should have about such contentions because we today affirm the ruling that precludes a hearing on the Sixth Amendment violation that purportedly arose from a conflict of interest at Badger's *Brady* hearing.

### III.

Even if we ignore the suggestive "coincidences" surrounding this prosecution, we are left with: (1) Lawhun's own statement that the prosecutor's testimony at the *Brady* hearing "surprised" her; (2) Lawhun's feeble "cross-examination" of the prosecutor from the office where she would subsequently be employed, along with her failure to inform the court of her "surprise" and take appropriate action; and (3) Lawhun's failure to call Patricia Badger–Johnson as a corroborating witness. Perhaps the New Jersey Appellate Division is correct in concluding that there is nothing to Badger's ineffective assistance claim beyond, "a series of unsupported claims and suppositions." App. 49. However, given this record, I believe Badger's claim of ineffective assistance of counsel merits a hearing, and I would remand the matter to the district court for an evidentiary hearing on that claim if for no other reason than to remove some of the substantial

smoke surrounding this prosecution as well as to uphold the integrity of the criminal justice system.

Accordingly, I dissent.

---

8. Badger's trial was held on July 13–17, 1992. Patricia Badger–Johnson was arrested on July 7, 1992, on an aggravated assault charge. App. 88. She was released on bail after her bail hearing on July 17, 1992. *Id.* 88, 128.